(No. 17090.—Decree affirmed.)
EMMA W. SMITH, Appellant, *vs.* VIOLET HERDLICKA *et al.* Appellees.

*Opinion filed December 23, 1926.*

1. JURISDICTION—*what is jurisdiction of subject matter.* Jurisdiction of the subject matter is the power to hear and determine causes of the general class to which the proceeding in question belongs, and such jurisdiction is always conferred by law.

2. SAME—*regularity is presumed where jurisdiction appears from record.* The record imports verity, and the court's finding, upon the facts recited, that it has jurisdiction is sufficient evidence of that fact unless the record itself shows the contrary, and where the fact of jurisdiction is made to appear there is a presumption of regularity in its exercise either by a court of general or limited jurisdiction.

3. DOWER—*when innocent purchasers are entitled to rely upon decree of divorce.* Where a decree of divorce is entered by a court having jurisdiction and is not reviewed on writ of error or appeal, innocent third parties who purchase a title acquired by one of the parties after the decree will be entitled to rely upon the decree as barring dower, and although the decree is afterwards set aside by bill of review on the ground of fraud and collusion, the second decree, while effective as to innocent third parties from the time of its rendition, will not be retroactive to disturb any rights acquired in reliance upon the decree of divorce.

4. JUDGMENTS AND DECREES—*when purchaser may rely upon decree.* It is the policy of the law to afford protection to innocent third persons, and when a decree affecting title to property has been rendered by a court having jurisdiction of the subject matter and the parties, a purchaser buying in good faith and in reliance upon the decree before a writ of error is prosecuted or other action taken to avoid it will be protected, notwithstanding the decree is afterwards reversed or set aside.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

ROBERT R. BALDWIN, for appellant.

SHERMAN C. SPITZER, GEORGE GILLETTE, ROBERT HUMPHREY, J. SCOTT MATTHEWS, JOHN B. SKINNER, and CHARLES A. CHURAN, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Emma W. Mackenzie on December 15, 1887, filed her bill for divorce in the city court of Aurora against Oscar C. Mackenzie, her husband, charging him with adultery and extreme and repeated cruelty. She alleged in the bill, among other things, that she resided in the city of Aurora, in Kane county, and for more than a year then elapsed had been an actual resident of the State. The defendant accepted service of process, entered his appearance and consented to an immediate hearing. The court heard the testimony of witnesses, including the complainant, and by its decree rendered on December 15, 1887, found that the complainant was an actual resident of the city of Aurora at the time she filed her bill; that she had resided in the State for more than a year; that the court had jurisdiction of the subject matter and of the parties and that the material allegations of the bill were true. A divorce was granted the complainant, and the decree provided that every demand, claim for alimony and right of dower accruing to either of the parties by reason of their marriage should cease and be determined forever. A certified copy of the decree was filed for record in the recorder's office of Cook county on May 10, 1890.

By two deeds dated March 5 and recorded April 8, 1889, Oscar C. Mackenzie acquired the title in fee simple

to blocks 14 and 15, each consisting of fifty lots, in Taylor's subdivision of blocks 11, 12, 14 and 15 of Goodwin, Balestier & Phillips' subdivision of the west half of the southwest quarter of section 26, township 39 north, range 13 east of the third principal meridian, in Cook county.  Each of these blocks at the time was subject to the lien of a trust deed from Edwin S. Stowe to Chalkley J. Hambleton, as trustee, dated September 27 and recorded December 21, 1888, and made to secure the payment of the grantor's four notes, aggregating $4000, given for part of the purchase price.  Mackenzie conveyed block 14 to Edgar A. Congdon by warranty deed dated April 9 and recorded June 7, 1889. By a warranty deed dated March 7 and recorded April 8, 1889, Mackenzie conveyed block 15 to Charles A. Vandever, James E. Kennedy and Frederick Burgess.  In both of these deeds Mackenzie described himself as unmarried, and each conveyance was made subject to the existing encumbrance.  Congdon and wife by warranty deed dated November 27, 1889, and recorded January 3, 1890, conveyed all the lots in block 14 to Edward T. Noonan, who also acquired the title to the lots in block 15 from Vandever, Kennedy and Burgess by warranty deed dated January 1 and recorded February 1, 1892.

Lots 1 to 7, 16, and 21 to 30, inclusive, in block 14, and lots 1 to 5 and 36 to 44, inclusive, in block 15, were subsequently released from the liens of the respective trust deeds to Chalkley J. Hambleton, subject to which the blocks had been conveyed to Mackenzie.  On September 28, 1898, two suits were filed in the superior court of Cook county to foreclose these trust deeds to the extent of the lots still encumbered by them.  Emma W. Mackenzie was not made a party to either of these suits.  Foreclosure decrees against, and master's sales of, the unreleased lots followed, and by two master's deeds dated March 26, 1901, Helen M. Kearns acquired title to them.  One of these deeds, conveying lots 8 to 15, 17 to 20 and 31 to 50, inclusive, in block 14, was re-

corded on April 27, 1901, and the other deed, conveying lots 6 to 35 and 45 to 50, inclusive, in block 15, was recorded on March 27, 1901.

A considerable number of persons became owners of the lots in the two blocks by direct or *mesne* conveyances from Edward T. Noonan or Helen M. Kearns. Some of these owners filed petitions under the Land Titles act for the registration of the title to their respective lots and certificates of title were issued to them. None of these certificates mentioned was made subject to a claim for dower on the part of Emma W. Mackenzie, nor did she file in the registrar's office notice of any right or claim to the lots brought under the provisions of the Land Titles act within two years after registration.

On January 20, 1891, nearly two years after Mackenzie had conveyed the blocks in question, Emma W. Mackenzie filed her bill of complaint against him in the city court of Aurora to review and set aside the decree of divorce granted her by the same court on December 15, 1887. Mackenzie was served with a copy of the bill but failed to file an answer and the bill was taken as confessed by him. The proceedings in the suit resulted in a decree on September 23, 1893, which recited that the defendant had by threats and fraudulent representations induced the complainant to give a partial consent to the commencement of the suit for divorce; that she was at the time acting under duress and the compulsion of her husband; that when the bill for divorce was filed she was not a resident of the city of Aurora, and that the suit was collusive and fraudulent. The decree of divorce was set aside and the complainant's status as the wife of the defendant was restored the same as though the divorce had never been granted. Subsequently, on October 3, 1898, she filed her bill for divorce in the superior court of Cook county against Mackenzie, charging desertion on his part. He answered the bill and upon a hearing a decree of divorce was rendered, the complain-

ant was allowed to resume her maiden name of Emma W. Smith, and she was awarded solicitor's fees and $600 in satisfaction of all alimony and maintenance.

Mackenzie died testate on August 10, 1921, a resident of the city of Albany, New York. His will was admitted to record in the surrogate's court of Albany county, in that State. He had married again and by his will made provision for his widow. His former wife, Emma W. Smith, once Emma W. Mackenzie, was not mentioned in the will. After Mackenzie's death Emma W. Smith filed four petitions in the circuit court of Cook county for the assignment of dower in blocks 14 and 15. In one of these petitions, entitled Emma W. Smith *vs.* Charles W. Lukes *et al.*, filed on April 6, 1923, the lots in block 14, which had not been brought under the Land Titles act, were involved. The second petition, entitled Emma W. Smith *vs.* Thomas Remes *et al.*, was filed on April 18, 1923, and included only the lots in block 14, the title to which had been registered. The third petition, entitled Emma W. Smith *vs.* Violet Herdlicka *et al.*, was filed on May 7, 1923, and concerned the lots in block 15, the title to which had not been registered. The fourth petition, entitled Emma W. Smith *vs.* Frank Zdenek *et al.*, was filed on May 7, 1923, and had reference to the lots in block 15, which were subject to the provisions of the Land Titles act. The petitions were amended and answers and replications were filed. By an order entered on April 2, 1925, the causes were consolidated under the title of Emma W. Smith *vs.* Violet Herdlicka *et al.* The conveyances and other transfers of the several lots and of interests therein, from the time Mackenzie acquired title down to the time of the hearing, and other facts of the case, were set forth in a stipulation of 109 sections. Other evidence also was heard. The court found that Emma W. Smith, the petitioner, was not entitled to dower in the real estate described in her petitions, and by its decree rendered on June 8, 1925, dismissed them for

want of equity at her costs. From that decree she prosecutes this appeal.

Appellant makes several contentions for the reversal of the circuit court's decree. They are, in substance, that the city court of Aurora was without jurisdiction to hear and determine the divorce suit, that its decree of divorce was void, and that no rights could be acquired or divested by it.

Jurisdiction of the subject matter is the power to hear and determine causes of the general class to which the proceeding in question belongs, and such jurisdiction is always conferred by law. (*People* v. *Ford*, 289 Ill. 550; *Oakman* v. *Small*, 282 id. 360; *O'Brien* v. *People*, 216 id. 354; *Sumner* v. *Village of Milford*, 214 id. 388; *People* v. *Talmadge*, 194 id. 67.) By section 4 of the Divorce act approved March 10 and in force July 1, 1874, (Smith's Stat. 1925, p. 984,) the circuit courts of the respective counties and the superior court of Cook county have jurisdiction in all cases of divorce and alimony allowed by the act. Section 2 of the same act provides that no person shall be entitled to a divorce pursuant to the act who has not resided in the State one whole year next before filing his or her bill or petition unless the offense or injury complained of was committed within this State or whilst one or both of the parties resided in this State; and the fifth section requires that the proceedings shall be had in the county where the complainant resides although process may be directed to any county in the State. The act entitled "An act in relation to courts of record in cities," approved March 26, 1874, (1 Starr & Curtis' Ann. Stat. 1896, p. 1200,) was effective when appellant's first suit for divorce was instituted in and determined by the city court of Aurora. Section 1 of that act conferred upon a city court concurrent jurisdiction with the circuit court within the city in all civil cases.

In her bill for divorce appellant alleged that she resided in the city of Aurora and that she had been an actual resident of the State for more than a year. She testified to

the same effect, and the decree of divorce recited these facts and found that the court had jurisdiction of the subject matter and of the parties to the suit. Hence the record disclosed a cause which the city court of Aurora had the power to determine. The record imports verity, and the court's finding, upon the facts recited, that it has jurisdiction is sufficient evidence of that fact unless the record itself shows the contrary. (*Grimm* v. *Grimm,* 302 Ill. 511; *Connely* v. *Rue,* 148 id. 207; *Matthews* v. *Hoff,* 113 id. 90; *Harris* v. *Lester,* 80 id. 307.) When the fact of jurisdiction is made to appear, the same presumptions of regularity in its exercise attend the proceedings of courts of limited jurisdiction as apply to the acts of courts of general jurisdiction. *Simmons* v. *Saul,* 138 U. S. 439; *Comstock* v. *Crawford,* 3 Wall. 396; *Matthews* v. *Hoff, supra; Fecht* v. *Freeman,* 251 Ill. 84; *Hoit* v. *Snodgrass,* 315 id. 548; 1 Freeman on Judgments, (5th ed.) sec. 392, p. 841.

Appellant insists, however, that while the record of the divorce suit showed that the city court of Aurora had jurisdiction to hear and determine the cause, yet the lack of jurisdiction to grant the divorce was established by the decree rendered on the bill for review. The decree of divorce was set aside because it had been collusively and fraudulently procured and not because the city court lacked jurisdiction to render it. The record of the divorce suit disclosed neither lack of jurisdiction nor even any irregularity in the proceeding. Until the decree of divorce was set aside no person was justified in disregarding it as not binding, and there was nothing in the chain of title to the lots that showed fraud or would put a third person upon inquiry. If the city court's exercise of its jurisdiction in the divorce suit was induced by the fraud and collusion of the parties to the suit the wrong is not to be corrected at the expense of an innocent purchaser, who had the right to rely on the decree as emanating from a court of competent jurisdiction. (*Voorhees* v. *United States Bank,* 35 U. S. 449;

*Buckmaster* v. *Carlin,* 3 Scam. 104.) A purchaser of land ignorant of fraud on the part of his grantor in legal proceedings affecting the title and without notice of anything to put him upon inquiry to ascertain whether there was any such fraud will be protected in his purchase as against the person claiming to have been defrauded. (*Hunter* v. *Stoneburner,* 92 Ill. 75.) Moreover, the law is well settled that when a decree affecting the title to property has been rendered by a court of equity having jurisdiction of the subject matter and of the parties, a purchaser who buys in good faith and in reliance upon the decree before a writ of error is prosecuted or other action taken to avoid it will be protected, notwithstanding the decree is afterwards reversed or set aside. *Kuzak* v. *Anderson,* 267 Ill. 609; *Hopkins* v. *Patton,* 257 id. 346; *Chicago and Northwestern Railway Co.* v. *Garrett,* 239 id. 297; *Ure* v. *Ure,* 223 id. 454; *Hammond* v. *People,* 178 id. 503; *Lambert* v. *Livingston,* 131 id. 161; *Hannas* v. *Hannas,* 110 id. 53; *Thompson* v. *Frew,* 107 id. 478; *Barlow* v. *Standford,* 82 id. 298; *Eldridge* v. *Walker,* 80 id. 270; *Wadhams* v. *Gay,* 73 id. 415; *Buckmaster* v. *Carlin, supra.*

Appellees were not parties to the suit for divorce nor to the bill for review. The decree of divorce remained unchallenged for upwards of three years and it was not set aside until nearly six years had elapsed. Mackenzie acquired title to the lots in question more than a year after the decree for divorce was rendered and sold and conveyed all of them to innocent parties nearly two years before the bill for review was filed and more than four years before the decree of divorce was set aside. It does not appear that from the time of the rendition of the decree of divorce until Mackenzie conveyed blocks 14 and 15 in March and April, 1889, appellant was ignorant of her right to have the decree vacated or that she was prevented from instituting appropriate proceedings for that purpose. During that period Congdon, who purchased block 14, and Vandever,

Kennedy and Burgess, who purchased block 15 from Mackenzie, had the right to rely upon the record in their investigation of Mackenzie's status. The decree of divorce expressly barred any right of dower which the appellant might have by reason of her marriage to Mackenzie. No burden rested upon the purchasers of the lots from Mackenzie to go back of the record of the suit for divorce or to make an independent investigation to determine whether the facts justified the decree of divorce. While the decree rendered on the bill for review would be effective as to innocent third parties from the time of its rendition, it would not be retroactive to disturb any rights which they had acquired in reliance upon the decree of divorce. (*Montanye* v. *Wallahan,* 84 Ill. 355.) It is the policy of the law to afford protection to innocent third persons. (*Mulford* v. *Stalzenback,* 46 Ill. 303; *Rivard* v. *Gardner,* 39 id. 125.) Appellant should not, more than thirty-five years after the rendition of the first decree of divorce, upon which innocent third persons had the right to rely and did rely, be permitted successfully to assert her right of dower against them. The repose of titles, and indeed every consideration of public policy, demand that such a purchaser without notice, relying upon a proceeding regular on its face in a court of competent jurisdiction, should be protected against secret vices founded on fraud and which could only be made to appear by the proof of extrinsic facts not shown by the record. No prudent person would purchase real property the title to which was affected by or involved in judicial proceedings, if he incurred the hazard of losing his money in case it should afterwards be made to appear that the record, sufficient on its face and on which he relied, was obtained by perjury or other fraudulent practice and was false in fact.

The circuit court rightly dismissed appellant's consolidated petitions for the assignment of dower, and its decree is affirmed.

*Decree affirmed.*