275

(No. 80-CC-0763—

A. B. RAYMOND CONLEY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 25, 1982.*

BRUCE D. LOCHER, for Claimant.

TYRONE C. FAHNER, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

This claim was filed to collect a settlement reached prior to a hearing before the Fair Employment Practices

Commission. Pursuant to our order of February 17, 1981, it was assigned to commissioner Robert J. Hillebrand for the purposes of holding a hearing and making a recommendation to the Court. Following the hearing, oral argument was held before the full Court.

Claimant, Raymond Conley, is a black male who was employed with the Illinois Department of Administrative Services. He had secured this employment through the Comprehensive Employment Training Act of 1973 (CETA). As a result of certain alleged discrimination practices which occurred on September 9, 1977, Claimant made a written complaint on September 15, 1977, to the Sangamon County Consortium, which was the local agency administering CETA in the Springfield, Illinois, area. Subsequently, notice of this was sent to Claimant's employer, the Illinois Department of Administrative Services, and an informal hearing was conducted in an effort to resolve the complaint. This effort apparently was unsuccessful.

On October 4, 1977, Claimant went to the Springfield office of the Fair Employment Practices Commission (FEPC) in order to file a formal charge of racial discrimination against the Department. The only document prepared at that time was a complainant information sheet. It was dated October 4, 1977. It contains Claimant's name and address, the full name of Claimant's employer and its Springfield address, the fact that Department discharged Claimant, the date of the act of alleged discrimination (September 9, 1977), and a short narrative of what occurred to lead Claimant to conclude he had been the victim of discrimination. It also contained the name of a witness to the alleged discrimination and other statistical information. It was prepared by an FEPC investigator from information he received from Claimant.

On May 3, 1978, Claimant signed a document formally prepared by the FEPC and entitled "Charge of Discrimination". This contains much of the factual material from the complainant information sheet and was sworn to by Claimant under oath. It contains the notations "Filed 10-4-77" and "Docketed 5-4-78". The reason for these notations is that administratively the FEPC considered the date of filing the charge to have been the date the complainant gave the factual information to the investigator.

Subsequently, after prehearing procedures, attorneys representing the Department and the attorney for Claimant reached a settlement which was formally presented to the FEPC administrative law judge. An order was entered September 21, 1979, by the law judge approving the settlement and recommending the FEPC dismiss its complaint "subject to its right to monitor and investigate to determine that the terms (of the settlement) are complied with". There was no evidence presented as to what further action was taken by the FEPC. The Department at no time during the proceedings raised any objections as to the timeliness of any filings, nor has appeal been taken from the recommended order of the FEPC law judge.

The settlement terms provided that the Department pay Claimant $3,000.00 in consideration of Claimant's releasing the Department and its personnel from any and all liability to Claimant on account of the alleged discrimination. The settlement agreement was executed September 19, 1979.

On November 26, 1979, complainant filed his complaint before the Court of Claims to seek a judgment for the settlement amount. Respondent filed a motion to dismiss on the grounds that the charge of discrimination

for an unfair employment practice was not filed with the FEPC within the statutory limitation period. Petitioner has raised the issues of waiver or of estoppel as to Respondent's defense. A hearing was ordered by the Court on the issues raised by the motion and petitioner's reply. There is no dispute as to the facts.

At the time of the alleged unfair employment practice, the relevant statute was section 8(a) of the Fair Employment Practices Act. It provided:

"Whenever within 120 days after the date that an unfair employment practice allegedly has been committed, a charge in writing under oath or affirmation is filed with the (FEPC) by a complainant and in such detail as to substantially apprise any party properly concerned as to the time, place and facts with respect to such alleged unfair employment practice, that any employer . . . hereinafter referred to as a respondent, has committed such unfair employment practice, the (FEPC) shall promptly serve a copy of the charge or summary thereof on the respondent and thereafter shall institute an investigation by its employees to ascertain the facts relating to such alleged unfair employment practice." Ill. Rev. Stat. 1977, ch. 48, par. 8.58(a).

Respondent's defense is based upon petitioner's alleged failure to file his "charge in writing under oath or affirmation" within 120 days of the alleged unfair employment practice. Petitioner, by way of reply, argues that Respondent either has waived this defense by failing to raise it in the proceedings before the FEPC or is estopped from now raising it by negotiating with petitioner and in fact actually entering into a final written settlement whereby petitioner has released all of his rights to seek any relief for the alleged discrimination. In order to decide this issue, we must first determine the nature of the 120-day time limitation in subparagraph (a) of section 8 of this Act.

Petitioner argues that the 120-day period is a statute of limitations and as such may be waived by the parties or, alternatively, Respondent may be estopped from raising it as a defense. Both parties have cited a series of

cases which rely upon the ruling by the supreme court in *Springfield-Sangamon County Regional Plan Commission v. FEPC* (1978), 71 Ill.2d 61, 373 N.E.2d 1307. This, however, is inapposite because the limitation issue before the Court in that case was the time defined in subparagraph (c) of section 8 (Ill. Rev. Stat. 1979, ch. 48, par. 858(c)), which mandates the filing of a *complaint* against the employer within 180 days after the filing of the *charge*. Neither party has raised any issue about the timeliness of the complaint.

Research has not disclosed any reviewing court's decision precisely on whether the 120-day limitation in section 8(a) is to be construed as a statute of limitations. In *Montgomery Ward v. FEPC* (1977), 49 Ill. App. 3d 796, 365 N.E.2d 535, there is reference to it as a statute of limitations. However, strictly defining it as a statute of limitations was not necessary to the decision therein, and such reference is used as a convenient description and not as a precise legal definition.

The general rule is that a statute which creates a right not existing under common law and which restricts the time within which a party may avail himself of such right is not a statute of limitations. Rather, the time element is an integral part of the enactment of the right and is a prerequisite to the acquisition of subject matter jurisdiction by the tribunal. (*Smith v. Toman* (1938), 368 Ill. 414, 14 N.E.2d 478; *Wilson v. Tromly* (1949), 337 Ill. App. 403, 84 N.E.2d 177.) While this principle has been applied by Illinois courts of review to those legislatively created rights which are the basis for such tort liability as that in the Dramshop Act (Ill. Rev. Stat. 1979, ch. 43, par. 135), the same rationale applies to any right newly created the remedy for which is to be pursued through an administrative procedure. Section 1 of the Fair Em-

ployment Practices Act (Ill. Rev. Stat. 1977, ch. 48, par. 851) declared it to be the public policy of this State that racial discrimination in employment should be eliminated, and a new right was thereby created.[1]

Since the 120-day limitation is a limitation on the jurisdiction of the FEPC to decide the issues—that is, a limitation on its subject matter jurisdiction—such jurisdiction may be acquired only by virtue of statute and cannot be waived (*Smith v. Herdlicka* (1926), 323 Ill. 585, 154 N.E. 414), nor can it be conferred on a court by the parties, nor is a lack of such jurisdiction waived by the presence of a party in the proceedings without objection. (*Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335.) The same rules are applicable to administrative proceedings. (*City of West Frankfort v. Industrial Com.* (1950), 406 Ill. 452, 94 N.E.2d 413; *Beam v. Erven* (1971), 133 Ill. App. 2d 193, 272 N.E.2d 685.) Moreover, lack of jurisdiction over the subject matter may be raised at any time, by direct or by collateral attack. (*Gocheff v. State Community College*

---

[1] We note that section 706(e) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000e—5(e)) also provides for the filing of a charge with the applicable Federal administrative agency within 180 days after the alleged wrongful employment practice has occurred. The Federal statutory scheme is somewhat different from that of Illinois in that the administrative agency has no authority to enforce any decision it renders; rather, if administrative action fails to result in a voluntary settlement of the dispute, the complainant may then initiate suit in the Federal court, which results in a trial *de novo.* However, the Federal courts have held that filing the initial charge in a timely fashion with the Federal agency is a jurisdictional prerequisite to bringing the action for relief in court. *Archie v. Chicago Truck Drivers* (CCA7 1978), 585 F.2d 210, *Patterson v. General Motors Corp.* (CCA7 1980), 631 F.2d 476, *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 94 S. Ct. 1011, *Guy v. Robbins & Meyers, Inc.* (CCA6 1975), 525 F.2d 124, *Charles v. National Tea Co.* (W.D. La. 1980), 448 F.Supp. 270, *Domingo v. New England Fish Co.* (W.D Wash. 1977), 445 F.Supp. 421, *Gray v. International Tel. & Tel. Corp.* (E.D. Mo. 1977), 428 F.Supp. 199, *Strozier v. General Motors Corp.* (N.D. Ga. 1977), 442 F.Supp. 475.

*of E. St. Louis* (1979), 69 Ill. App. 3d 178, 386 N.E.2d 1141; *Lebanon Trust & Savings Bank v. Ray* (1973), 10 Ill. App. 3d 345, 293 N.E.2d 623.) Since Respondent has properly objected to the jurisdiction of the FEPC to hear this matter, this Court can and should consider such objection.

Section 8(a) of the Act requires that a charge be filed within 120 days and that such charge be "in writing under oath or affirmation" and that it be "in such detail as to substantially apprise any party properly concerned as to time, place, and facts with respect to" an alleged unfair employment practice. The statute therefore establishes four filing requirements—(1) it must be in writing; (2) it must be filed within 120 days; (3) it must be under oath or affirmation; and (4) it must be in such detail as to substantially apprise a concerned party as to time, place and facts. The fulfillment of each of these requirements, however, is not necessary for the conferring of subject matter jurisdiction on the FEPC. The complainant information sheet filed with the FEPC on October 4, 1977, filled out by the investigator for the FEPC during his interview with Claimant, fulfills all except the third one.

The third requirement, under oath or affirmation, is not such a requirement as is needed to confer subject matter jurisdiction in the context of the events as they occurred in this case. The purpose of the requirement is to subject the party making the complaint to prosecution for perjury in case the matter sworn to proves to be false. (*Rutledge v. Dept. of Registration & Education* (1966), 77 Ill. App. 2d 103, 222 N.E.2d 195.) The formal charge finally signed by the Claimant on May 3, 1978, is sworn to, and the purpose was thus fulfilled. There is no rational connection between the 120-day requirement and the sworn complaint requirement that would man-

date that the charge and the verification under oath both be made within 120 days. This is supported by the fact that the statute does not require that a copy of the sworn charge be served upon the employer. It mandates the FEPC to "promptly serve a copy of the charge *or summary thereof*" on the employer after the initial filing. It is therefore obvious that the legislature intended that at some point in the proceedings a sworn charge be on record with the FEPC, and this intent was satisfied on May 3, 1978.

The motion to dismiss filed by the Respondent is therefore denied. Judgment is entered for Claimant and his attorney (pursuant to the settlement) and against Respondent for $3,000.00. Attorneys fees and costs are denied.