Suzanne Gaiennie, Conservator of Estate of Leone W. Armstrong, Plaintiff-Appellee, v. Alma B. Fringer, and Gilbert Wayne Johnson. Alma B. Fringer, Defendant-Appellant.

Gen. No. 10,797.

Second District.

February 17, 1955.

Rehearing denied May 3, 1955.

Released for publication May 5, 1955.

Welsh & Welsh, of Rockford, for appellant; C. K. Welsh, of Rockford, of counsel.

Stanley H. Guyer, of Rockford, for appellee.

PER CURIAM.

This action was brought by Suzanne Gaiennie, conservator of the estate of Leone W. Armstrong, incompetent, against Alma B. Fringer and Gilbert Wayne Johnson, defendants, to recover damages for personal injuries to Leone W. Armstrong resulting from a collision between an automobile owned and driven by Alma B. Fringer, in which Leone W. Armstrong was riding, and an automobile driven by defendant, Gilbert Wayne Johnson, in the late afternoon on August 23, 1951.

The issues in the trial court were formed by the third amended complaint as amended, consisting of two counts, and answers thereto. Count 1 charged the defendant Fringer with wilful and wanton misconduct and count 2 charged the defendant, Johnson, with ordinary negligence. Defendant, Fringer, filed a motion for a directed verdict at the close of all of the evidence upon which the court reserved its ruling and submitted the case to the jury on both counts. The jury returned a verdict of guilty as to defendant, Fringer, and assessed plaintiff's damages against the defendant, Fringer, in the sum of $35,000 and returned a verdict of not guilty as to defendant, Johnson. Judgments were entered upon the verdicts, and after the denial of motions by defendant, Fringer, for judgment notwithstanding the verdict and for a new trial, she appealed to this court from the judgment against her.

At the time of the accident Leone W. Armstrong was riding as a guest passenger in the right rear seat of an automobile owned and driven by defendant, Fringer. Josephine Hadley, sister of the plaintiff, rode in the right front seat with the driver and Emaline Nelson, who died following the accident, rode in the left rear seat with Leone W. Armstrong. After dining at a public restaurant on Alpine road, a short distance south of the intersection of Alpine road and East State street, also known as U. S. route 20, the occupants of the Fringer car, seated as aforesaid, were being driven north on Alpine road by the defendant, Fringer, with the intention of going to one of their homes to play bridge. East State street was a through highway and stop signs were located on Alpine road near the southeast and northwest corners of the intersection facing north and south, respectively. East State street extended east and west and Alpine road extended north and south. East State street is downgrade from the crest of a hill some 600 or 700 feet east of the intersec-

tion to and through the intersection thereof with Alpine road. Defendant, Johnson, driving west on East State street approaching the intersection from the east at a speed variously estimated from 40 to 55 miles per hour collided with the Fringer car in the northwest portion of the intersection. The collision occurred outside the city limits of Rockford, Illinois. The highways were dry and the sun was shining. Leone W. Armstrong was seriously and permanently injured in the collision.

Michael Iasparo, deputy sheriff of Winnebago county, Illinois, testified to the physical situation at the intersection where the accident occurred as follows: The pavement on Alpine road is blacktop and 23 feet wide. East State street is straight and upgrade for approximately 700 feet east of the intersection. When at the stop sign on the southeast corner of East State street and Alpine road you can see about 600 feet east on East State street. It is 30 feet to the south edge of the gravel portion of East State street from the stop sign on the southeast corner. After the accident the left side of the Fringer car was up against the front end of the car of Joseph B. Peterson which was at the stop sign on the northwest corner facing north. This stop sign is on the west side of Alpine road and near the north side of East State street. The rear end of the Fringer car was up against the stop sign at the northwest corner. The car of defendant, Johnson, was stopped west of the intersection facing due west entirely off the pavement on the gravel shoulder on the north side of East State street about 30 feet from the other two cars. The impact appeared to have occurred about 20 feet southeast of where the Fringer and Peterson cars were and a little east of the center line of the traveled portion of Alpine road and a little south of the center line of East State street. The pavement on East State street is 22 feet wide.

Joseph Peterson testified that he was driving south on Alpine road approaching the intersection from the north and stopped 5 feet or so north of the stop sign located on the west side of Alpine road about 15 or 20 feet north of the north edge of the paved portion of East State street. As he approached the intersection he saw the Fringer car stopped at the stop sign located south of the intersection on the east side of Alpine road. After waiting for traffic to clear he and Mrs. Fringer both started forward. As Peterson started up he looked to his left and saw the Johnson car coming from the east about 400 feet east of the intersection and Peterson stopped with the front end of his car even with the stop sign near the northwest corner. After Mrs. Fringer started forward she was facing north and never turned her head or looked to her right or left but drove at a snail's pace from where she had stopped at the stop sign into the north half of the intersection where the collision occurred without again stopping. Peterson heard Johnson's brakes squeal before the impact and saw his car lurch slightly over the center line of East State street.

Esther Quist testified that she saw the Fringer car stopped at the stop sign south of this intersection as she approached from the south on Alpine road. She stopped behind the Fringer car and after two cars passed the intersection going east she saw Mrs. Fringer look to the right and left and start forward going slowly. As Mrs. Fringer started forward Mrs. Quist looked to her right and saw the Johnson car coming from the east up about the grocery store east of the cemetery on the south side of State street east of the intersection. Mrs. Fringer never turned her head or looked east or west after starting forward from the stop sign until the collision occurred and never changed her speed or direction. Mrs. Quist heard the brakes on the Johnson car squeal before the collision.

407

Josephine Hadley, sister of Leone W. Armstrong, riding in the right front seat of the Fringer car, testified that they were going north on Alpine road and Mrs. Fringer stopped at the stop sign south of the intersection. After waiting about a minute two cars went by going east, then Mrs. Fringer looked right and left and drove slowly north toward the intersection. When the front end of the Fringer car got onto the south edge of the paved portion of State street witness Hadley looked east, saw the Johnson car coming west toward the intersection and said to Mrs. Fringer, "Here comes a car pretty fast." Mrs. Fringer did not look to the right or left, change her speed or veer her car from a straight course after starting up from the stop sign until the collision with the Johnson car occurred. When the impact occurred the front wheels of the Fringer car were at or near the north edge of the paved portion of State street.

Donald Gustafson, a passenger riding in the front seat of the Johnson car, testified that Johnson was driving west on U. S. route 20 approaching the intersection and when they were at the crest of the hill about 400 feet east of the intersection, they were traveling about 45 or 50 miles per hour. Gustafson saw a car stopped on the north side of the intersection headed south and one on the south side headed north. As they got nearer the intersection, the car on the north side started to creep out and Johnson blew his horn and it stopped. At the same time the car on the south side started forward, but did not stop. When Johnson blew his horn he was going about 40 to 45 miles an hour. The northbound car just kept coming onto the highway. Johnson applied his brakes about 125 feet from the northbound car and we slid and skidded, swerved a little bit to the left and hit the right rear section of the Fringer car. At the time the collision occurred, the Johnson car was going about 25 or 30 miles an hour.

408

There were no other occurrence witnesses.

The defendant Fringer contends that the sole issue to be finally decided on this appeal is whether her conduct under the facts and conditions as disclosed by the evidence constitutes, as a matter of law, wilful and wanton misconduct within the meaning and intent of the "guest statute" of the State of Illinois. She calls attention to the fact that this statute (par. 58a, ch. 95½, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 85.064 (1)]) provides in effect that a guest passenger in a motor vehicle without payment for such transportation, shall not have a cause of action for damages against the driver or operator of such motor vehicle, unless the accident from which the damages arise, was caused by the wilful and wanton misconduct of the driver and points out that the Supreme Court of Illinois has held this statute constitutional in the case of Clarke v. Storchak, 384 Ill. 564. She further contends that cases decided by our Supreme and Appellate Courts require that an act alleged to be wilful and wanton misconduct must demonstrate and prove, either (1) a consciousness on the part of the defendant that his conduct would naturally and probably result in injury, or (2) an intentional disregard of a known duty, or (3) an absence of care for the life, person or property of others such as to exhibit a conscious indifference to consequences, and cites Clark v. Hasselquist, 304 Ill. App. 41; Streetor v. Humrichouse, 357 Ill. 234 and Bartolucci v. Falleti, 382 Ill. 168.

The Clark v. Hasselquist case and the Bartolucci case cited by defendant Fringer are distinguishable from the case here under consideration in that it appears from the recital of the facts in those cases that the circumstances and conditions under which the accident or accidents occurred were not created or brought about by the fault of the driver or drivers. In the Streetor case the Supreme Court of Illinois reversed

409

the judgment in favor of the defendant in the trial court and the action of the Appellate Court in affirming the same and held that whether a personal injury has been inflicted wilfully and wantonly is a question of fact to be determined by the jury if there is evidence to support the allegation, and further held that whether an act is wilful and wanton depends upon the circumstances of each case. The Clarke v. Storchak case cited by defendant, Fringer, is factually not in point. The court there recognized that there was no fact or circumstance present to put the driver on his guard. Also, in that case, the court stated that the question of whether one was guilty of wilful or wanton misconduct was one of fact for the jury to pass upon.

Defendant, Fringer, argues that there is no evidence in the record which proves wilful and wanton misconduct on her part, and that there is no evidence, or any reasonable inference arising therefrom, showing any consciousness on her part that her conduct would naturally and probably result in injury to one of her passengers or showing any absence of care on her part for the life, person or property of her passengers or herself such as exhibited a conscious indifference to consequences.

Defendant, Fringer, further points out that she brought her vehicle to a complete stop at the stop sign located on the east side of Alpine road and south of East State street, looked in both directions for oncoming traffic and observing none, drove her car into the intersection at a slow rate of speed and that it was not until her vehicle reached the paved portion of East State street that the passenger in the right front seat of her car said to her "here comes a car pretty fast." She contends that this created a sudden emergency so as to relieve her from acting with the same degree of care and judgment as would be required of her when no emergency or peril existed.

410

The evidence in this case clearly establishes that from the time defendant, Fringer, started forward from the stop sign near the southeast corner of the intersection until the collision occurred she drove very slowly for a distance of approximately 50 feet or more and up a slight elevation without once looking to the right or left for oncoming traffic on the intersecting through highway, although her attention was called to the fact of the presence of a rapidly approaching car when she was just starting to enter the eastbound traffic lane of East State street. No explanation by way of evidence or argument is made for the failure of defendant, Fringer, to look to her right or left during the intervening distance traveled from the stop sign to the point of impact or to show why she did not stop or attempt to stop her car or accelerate its speed after attention was called to the fact of the presence of the oncoming car. Also, there remains unexplained, either by evidence or argument, defendant, Fringer's failure to look to the right or left during the 30 feet or more she traveled after leaving the stop sign and before reaching the south edge of the paved portion of East State street at which point her attention was called to the presence of the oncoming car.

■■ The law recognizes a distinction between the situation where an emergency is created by the negligent conduct of another as opposed to the situation where an emergency is created by one's own fault. (Sullivan v. Heyer, 300 Ill. App. 599; McLaren v. Byrd, 296 Ill. App. 345; Blumb v. Getz, 294 Ill. App. 432.) In the Sullivan case the court said: "One cannot create an untoward situation or emergency by his own action and then by reason of such situation so created be relieved from such responsibility as the law requires of a person acting under normal conditions." Under the facts and circumstances shown by the evidence in this case, it would appear that any emergency or situation

411

of peril created was the result of fault on the part of defendant, Fringer.

██ An exact all-inclusive definition of wilfulness and wantonness is difficult to achieve. In Signa v. Alluri, 351 Ill. App. 11, 15, the court said: "The myriad of cases in which the courts of this State have defined wilful and wanton conduct afford no simple formula by which its existence in a given case may be ascertained." In Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 583, the court said: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it." In Mower v. Williams, 402 Ill. 486, it was stated at page 490: "To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious, from his knowledge, of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, makes a case of constructive or legal wilfulness."

The court further said in the Mower case: "As to whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence, and while the rule of law does not vary, the facts to which the law is applicable always present divergent circumstances and facts which, in most instances, are wholly dissimilar." Manifestly, the question of what constitutes a wilful and wanton act largely depends upon the surrounding conditions and circumstances in each individual case. In the case here under consideration we believe that

the evidence sufficiently shows or at least admits of the reasonable inference, that defendant, Fringer, before the collision occurred had knowledge of the impending danger of a collision with the Johnson car and failed to exercise ordinary care to prevent it.

The conditions and circumstances surrounding the accident in this case are comparable to those in the case of Ritter v. Nieman, 329 Ill. App. 163. In the Ritter case the court said: "We are also of the opinion that the court erred in not submitting to the jury the issues raised in the second count of the complaint, namely whether or not the defendant was guilty of wanton and wilful misconduct. If the witnesses for the plaintiff are to be believed, it can be fairly inferred that the defendant drove through a stop sign without stopping and looking, and into an intersection where he struck an automobile that he didn't even see before he struck it. The defendant had crossed this intersection for many years and knew of the existence of the stop sign and that this was a place of danger. Whether or not such conduct indicated a reckless disregard for the safety of others was a question of fact properly to be submitted to a jury."

In Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, the court held that the question whether a personal injury had been inflicted by wilful or wanton conduct is a question of fact to be determined by the jury. Under the facts and circumstances shown by the evidence in this case, we cannot say, as a matter of law, that the conduct of defendant, Fringer, did not constitute wilful and wanton misconduct within the meaning and intent of the "guest statute" of the State of Illinois.

It is the established rule that motions for a directed verdict and for judgment notwithstanding the verdict present questions of law only as to whether, when all the evidence is considered, together with all

413

reasonable inferences to be drawn therefrom, in its aspect most favorable to the plaintiff, there is evidence tending to prove any cause of action stated in the complaint. The trial court did not err in failing to direct a verdict for defendant, Fringer, or in overruling her motion for judgment notwithstanding the verdict.

We hold that there was sufficient evidence to sustain the verdict and that the verdict of the jury was not against the manifest weight of the evidence. The motion of defendant, Fringer, for a new trial was properly overruled by the trial court. The judgment of the circuit court is therefore affirmed.

Judgment affirmed.