2021 IL App (1st) 200935

FIFTH DIVISION
Order filed: July 23, 2021

No. 1-20-0935

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| OLIVIA TAMEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| | ) | |
| v. | ) | No. 17 L 007648 |
| | ) | |
| CHICAGO PUBLIC SCHOOLS, ACADEMY FOR | ) | |
| URBAN SCHOOL LEADERSHIP (AUSL) d/b/a | ) | |
| TARKINGTON SCHOOL OF EXCELLENCE, and | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | Honorable |
| (Chicago Public Schools and Chicago Park District, | ) | Thomas More Donnelly, |
| Defendants-Appellees). | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the summary judgment entered in favor of the defendants as the plaintiff failed to establish a genuine issue of material fact that the defendants' conduct was willful and wanton.

¶ 2    The plaintiff, Olivia Tamez, appeals from the order of the circuit court of Cook County granting summary judgment in favor of the defendants, Chicago Park District (Park District) and the Board of Education of the City of Chicago, sued as "Chicago Public Schools" (the Board). On appeal, the plaintiff maintains that the circuit court erred in granting summary judgment because there was a genuine issue of material fact as to whether the defendants' conduct was willful and wanton. For the reasons that follow, we affirm.

¶ 3    The plaintiff filed a five-count complaint, charging the Park District, the Board, and the Tarkington School of Excellence (Tarkington School) with willful and wanton conduct that proximately resulted in the injury she sustained when she fell from a misplaced metal step on the bleachers in the school gymnasium during a Park District volleyball tournament. The complaint also charged the Tarkington School and the Board with simple negligence related to her fall. The circuit court dismissed count III, which alleged negligence against the Board. The plaintiff entered into a settlement agreement with the school, and consequently, counts I and II were dismissed, leaving only counts IV and V, which alleged willful and wanton conduct against the Board and the Park District, respectively.

¶ 4    Following discovery on counts IV and V, the Board and the Park District each filed separate motions for summary judgment. In their motions, the defendants asserted immunity under Section 3-106 of the Local Governmental & Governmental Employees Tort Immunity Act (The Act) (745 ILCS 10/3-106 (West 2016)) and argued that the plaintiff cannot establish that the defendants' conduct was willful and wanton. On August 19, 2020, after a hearing on the motions, the circuit court orally granted both motions and subsequently entered a written order on August 25, 2020, granting summary judgment in favor of the defendants. This appeal followed.

¶ 5      Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). Our review of an order granting summary judgment is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993). In conducting that review, we examine all of the pleadings and evidentiary material on file at the time of the entry of the orders appealed from in the light most favorable to the nonmoving party. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). The following facts relevant to the disposition of this appeal are adduced from that evidentiary material and are taken with its inferences most favorable to the plaintiff. See *Lapidit v. Memorial Center*, 144 Ill. App. 3d 141, 147 (1986).

¶ 6      On March 21, 2017, the plaintiff attended a volleyball tournament run by the Park District and held inside the gymnasium of the Tarkington School. The seating inside the gymnasium consisted of bleachers. The plaintiff testified in her deposition that while she was descending the bleachers, she tripped on a movable metal step causing her injury. She had been sitting in the same spot on the bleachers for approximately five hours before she fell, did not see anyone else step on the metal step prior to her fall, and did not see anyone else have any issues with the bleachers that evening. She also testified that she was unaware of who set up the bleachers for the volleyball tournament.

¶ 7      According to the plaintiff's expert, Scott Leopold, who is a licensed engineer, the bleachers contain a metal step that should attach to the front of the bleachers and rest on the gymnasium floor. If assembled this way, the metal step would be the first step when ascending the bleachers from the gymnasium floor and the last step when descending the bleachers onto the gymnasium floor. Leopold authored a technical report in which he attached photographs of the bleachers, which revealed the bleachers have small warning labels stating: "Reference Owner's Manual for

Safe Operating and Maintenance Instructions." The manual advises the user to verify that "front aisle steps or portable front steps are securely attached prior to use" and that unauthorized personnel should not operate the bleachers. Leopold opined that "[f]rom the point of view of a spectator, the [moveable metal] step appeared to be an integral part of the bleachers." He also offered opinions about the safety of the bleachers, the failings of the defendants, and the safety instructions for the bleachers contained in the operations manual, but he did not have any information on whether anyone at the Board ever had that manual. He was also unable to determine who set up the bleachers. He concluded that the misplaced step was unreasonably dangerous because, *inter alia*, it was unstable and that the bleachers were unreasonably dangerous because the defendants either did not have an instruction manual or were unfamiliar with it.

¶ 8    Tarkington School is run by the Board, and the Board and the Park District have an agreement where each entity shares the school gymnasium, which is one of the "Shared Use Facilities" pursuant to the agreement. Paragraph 3.10 of the agreement states: "The Board shall provide any and all structural repairs to the School (including the Exclusive Use Facilities) and shall also provide all routine janitorial services, maintenance and non-structural repairs, at its own expense, to the Shared Use Facilities."

¶ 9    On March 1, 2014, the Board contracted with SodexoMagic, LLC ("Sodexo") for facility management services at Tarkington School. Pursuant to that contract, Sodexo provided a full-time engineer at Tarkington—James Johnson—who is not an employee of the Board. Jessica Reisner, principal of the school, testified in her deposition that maintenance as well as "pull[ing] out or put[ting] back" the bleachers was Johnson's responsibility and, therefore, she was not given training on operating the bleachers. Tarkington School has use of the gymnasium on weekdays during school hours, from 8:15 a.m. to 3:15 p.m. and after 3:15 p.m., the gymnasium "belongs to"

the Park District for its programming. According to Reisner, if the Park District had an event in the gymnasium after school, Johnson would need to open the bleachers before he left for the day. If the Park District needed the bleachers opened for a Park District event, the protocol was that someone from the Park District would send an email request to Johnson and copy Reisner to that email. However, she did not know who opened the bleachers for the Park District volleyball tournament on March 21, 2017.

¶ 10    According to Reisner, she was not aware of the bleachers having a movable metal step that connects to the bottom portion of the bleachers, nor was she aware of the school owning instruction manuals for the bleachers. Aside from the plaintiff's injury, Reisner was not aware of any other injuries or incidents involving the bleachers at Tarkington School. It is her expectation that the Park District is responsible for the safety of visitors using the gymnasium during Park District events.

¶ 11    Amanda Burke, the Park Supervisor for the Park District, testified in her deposition that she has been assigned to Tarkington school since August 2016. During the school year, the Park District has exclusive use of the gymnasium after 4:30 p.m. On March 21, 2017, she entered the gymnasium at 4:30 p.m. and was the first Park District employee to arrive. When she arrived, the bleachers were already in the open position. Burke recalled requesting that Johnson open the bleachers a few days prior to the March 21, 2017 volleyball tournament. However, she did not personally observe Johnson open the bleachers, and therefore, did not know if he did. Burke did not know of anyone else Johnson would delegate the responsibility of opening the bleachers to nor did she know if Johnson delegated the task of opening the bleachers to anyone else. Neither Burke nor any other Park District employee opened the bleachers for the volleyball tournament. Burke was not responsible for the opening or maintenance of the bleachers, and if she needed to use them,

she was to contact Johnson. Burke did not observe any issues with the bleachers on the day of the volleyball tournament. Prior to the plaintiff's injury, Burke was not aware of any problems with the bleachers, and there were no previous injuries or complaints attributable to the bleachers.

¶ 12    The Sodexo engineer, Johnson, testified in his deposition that he was working at Tarkington School on March 21, 2017. However, he stated that he did not set up the bleachers for the Park District volleyball event that evening and did not recall opening the bleachers for any Park District events. Johnson also testified that he did not recall Burke asking him to open the bleachers for the volleyball event nor did he recall asking anyone else to open the bleachers for the event. According to Johnson, he did not know who opened the bleachers for the volleyball event. When asked about the metal step, Johnson testified that he was not aware that the step was movable and that he only became aware that the step was not in the correct position after the plaintiff's accident.

¶ 13    On August 19, 2020, the circuit court granted the defendants' motions for summary judgment. In its oral ruling, the circuit court found that the defendants were immune from liability under section 3-106 of the Act, which provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." See 745 ILCS 10/3-106 (West 2018).

The circuit court reasoned that the plaintiff cannot establish, with the evidence of record, that the defendants engaged in willful and wanton conduct as there is no evidence proving that either

defendant knew or should have known that failure to inspect or affix the metal step in the proper place according to the operations manual posed a high probability of serious harm to others. Following the hearing, the circuit court entered a written order granting both defendants' motions for summary judgment.

¶ 14     On appeal, the plaintiff concedes that the defendants are immune from liability under section 3-106 of the Act unless she can establish that her injury was proximately caused by the defendants' willful and wanton conduct. However, she asserts that the circuit court erred in granting the defendants' motions for summary judgment because she established that there was a genuine issue of material fact that the defendants' conduct in failing to, *inter alia,* inspect, identify, or discover the misplaced step on the bleachers as well as properly train or educate on the use of the bleachers pursuant to the operations manual amounted to willful and wanton conduct. We disagree.

¶ 15     Section 1-210 of the Act defines "willful and wanton conduct" as follows:

> " 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an *utter indifference to or conscious disregard for the safety of others* or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." (Emphasis Added.) 745 ILCS 10/1–210 (West 2016).

¶ 16     The plaintiff does not allege that the defendants' conduct was intentional. Therefore, we focus our analysis on the nonintentional element of the Act's definition of willful and wanton conduct—whether the defendants engaged in a course of action which showed an "utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210 (West 2016). Willful and wanton misconduct goes beyond mere inadvertence, incompetence,

or unskillfulness, which may constitute ordinary negligence. *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 637 (1995); *Murphy v. Jewel Companies, Inc.*, 24 Ill. App. 3d 1, 4 (1974). Instead, a defendant " 'must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' " *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 122-23 (2010). In other words, the plaintiff must establish that the defendant "had knowledge, or should have had the knowledge under the circumstances, that his conduct posed a high probability of serious physical harm to others." *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶ 72 (quoting, *Pomrehn v. Crete–Monee High School District*, 101 Ill. App. 3d 331, 335 (1981)). While generally the issue of whether a defendant's conduct is willful and wanton is a question for the jury, when, as here, discovery has been completed and "what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered." *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27 (quoting, *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587 (1971).

¶ 17    In urging reversal of summary judgment, the plaintiff argues that there was sufficient evidence to create a genuine issue of material fact that the defendants' conduct was willful and wanton in that each: (1) knew or should have known of the misplaced metal step and its apparent danger, and (2) knew or should have known that failure to inspect along with failure to, *inter alia*, instruct and train employees on the proper maintenance and use of the bleachers in accordance with the operations manual posed a high probability of physical harm to spectators.

¶ 18    However, the plaintiff's arguments are misplaced for two reasons. First, the evidence of

record fails to establish that the defendants had knowledge of the misplaced step or knowledge of previous injuries involving the step or bleachers in general. In reaching this conclusion, we find *Leja v. Community. Unit School District 300*, 2012 IL App (2d) 120156, instructive. In *Leja*, the plaintiff was struck in the face by a volleyball net crank she operated in her school's gymnasium. The plaintiff alleged that the school's failure to alleviate the danger of the crank amounted to willful and wanton misconduct. This court found there was no willful and wanton misconduct on the part of the school where there was no evidence that the school had knowledge of any defect in the crank that would pose a serious danger to others. *Id.* ¶¶ 13-15.

¶ 19    In the present case, prior to the plaintiff's injury, there were no problems with the bleachers. The plaintiff testified in her deposition that she did not see anyone else experiencing issues with the bleachers or stepping on the movable metal step on the evening of her injury. Principal Reisner was unaware of any previous injuries involving the bleachers or the metal step. Burke, the Park Supervisor, was unaware of any prior incidents or injuries from the bleachers, was unaware of any dangers in the bleachers, was unaware of anything out of the ordinary with the metal step and had not received any complaints about the bleachers prior to the plaintiff's injury. Johnson was not aware that the step was movable and only became aware that the step was not in the correct position after the plaintiff's injury. Based on the evidence of record, the plaintiff has failed to establish that the defendants knew the metal step was misplaced and could be a potential threat to others. While the defendants being unaware of a potential danger could possibly amount to carelessness or inadvertence—which may constitute ordinary negligence—this is simply insufficient to establish willful and wanton conduct. *Geimer*, 272 Ill. App. 3d at 637. In other words, there is no evidence that either defendant acted with an utter indifference to or conscious disregard for the plaintiff's safety.

¶ 20    Second, we find no case law, and the plaintiff cites no case law, which supports the argument that a failure to inspect without prior knowledge of a danger—even when coupled with other omissions—amounts to willful and wanton misconduct. We have, however, found case law holding the opposite. We find this court's decision in *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337 (1988), illustrative in this regard. In *Majewksi*, the plaintiff sought damages for injuries that he sustained in falling on broken glass while playing touch football on a field owned by the park district. He alleged that the park district's willful and wanton misconduct consisted of two omissions: (1) failing to post signs around the football field warning of the possible presence of broken glass; and (2) failing to inspect, and remove debris from, the field. However, we found that these two allegations "describe mere omissions," which perhaps might constitute ordinary negligence, but do not amount to willful and wanton misconduct. *Id*. at 341. In the present case, the evidence reflects that: (1) the defendants were not aware of any danger or threat of danger on the bleachers prior to the plaintiff's injury; (2) there were no previous injuries connected to the bleachers; (3) Principal Reisner, Park Supervisor Burke, nor Engineer Johnson were aware of the operations manual for the bleachers; and (4) the defendants were not aware that the metal step was misplaced. Therefore, based on the evidence presented and following *Majewski*, any omission by the defendants, including a failure to inspect or train pursuant to the operations manual, might constitute ordinary negligence, but does not amount to willful and wanton misconduct—or an utter indifference to or a conscious disregard for the safety of others.

¶ 21    Accordingly, we cannot say the circuit court erred in finding that the plaintiff failed to establish a genuine issue of material fact that the defendants' conduct was willful and wanton, and therefore, we affirm the judgment of the circuit court.

¶ 22    Affirmed.