(No. 30688.—

IDA MARIA MOWER *et al.*, Appellees, *vs.* HERBERT WILLIAMS, Appellant.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

STONE, STONE & HESS, of Bloomington, for appellant.

COSTIGAN, WOLLRAB & YODER, of Bloomington, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellees, Ida Maria Mower and Val A. Mower, filed suit in the circuit court of McLean County to recover damages sustained when their car, being driven by the husband, collided with a State-owned truck equipped with a snow plow to the front, which was being operated by the appellant in clearing the snow from the highway.

The complaint, consisting of two counts, charges in one ordinary negligence and in the other wilful and wanton conduct. The defendant filed his answer and the cause was tried before a jury. At the close of all the evidence the

court sustained a motion for a directed verdict on the grounds of insufficiency of the evidence as a matter of law, and common-law governmental immunity including statutory immunity. From this ruling an appeal was taken to the Appellate Court which reversed and remanded the cause. The defendant, waiving his right to a new trial, moved to strike the remandment, which motion was sustained, and appealed to this court.

The principal and controlling questions are: (1) Was there any evidence of wilful and wanton conduct to require submission of that question to the jury; and, (2) Is defendant clothed with immunity from liability for his acts of negligence.

Defendant contends first that the trial court correctly refused to submit the wilful and wanton count of the complaint to the jury for the reason that there is no evidence to sustain that count. In order to ascertain whether the court was warranted, as a matter of law, in its failure to submit this question to the jury, an examination of the evidence must be made. An analysis discloses that just prior to the collision defendant was driving a State-owned truck, equipped with a snow plow, in a northerly direction on Route 150, near the city of Bloomington. There was considerable snow and slush on the pavement and as the plow proceeded it threw snow and dirt on the right side of the truck obscuring the vision out of the right cab window and its right windshield. At a point on Route 150, about one-eighth mile south of its intersection with Route 66, which runs east and west, defendant stopped the snow plow and he and his helper cleaned the windshield and right window. After doing this they proceeded north to the intersection plowing snow as they went. The truck was equipped with a red flasher light atop the cab which was turned on. Defendant stopped the truck at the intersection, looked to the front and left for traffic and asked his helper, one Dunlap, to look to the east. Dunlap opened the cab door and stated

it was safe to proceed. There were two cars on the curve to the east, which the evidence disclosed was about one-half mile east of the intersection, traveling at a speed of about thirty miles per hour. They were going west on Route 66 on the north lane of said route and were approaching the intersection of Route 150. Route 66 at this point consisted of two lanes of traffic, one westbound and one eastbound, being separated some distance by an intervening dirt tract. Both highways were covered with wet snow and slush and were very slippery. There were signs on Highway 66 to the east of the intersection located 2532, 5082 and 807 feet, respectively, which warned westbound traffic of the intersection. Defendant stopped at the intersection, waited one or two minutes for eastbound traffic to clear, and then drove the snow plow into the intersection, crossing the south lane of the highway, slowed a little as he passed the parkway and then proceeded in the north lane of Highway 66. Plaintiffs were about 200 feet east of the intersection when they saw the plow enter. They blinked their lights and sounded their horn, applying their brakes, at which time their car began to skid and sway on the highway. When the snow plow slowed in passing the parkway, plaintiffs released their brakes and reapplied them as the plow proceeded. As the blade of the snow plow reached the center of the north lane of Highway 66 it was struck by plaintiffs' car resulting in the damages as alleged in the complaint.

Defendant testified he did not look in the direction from which plaintiffs' car came, but that it was the duty of his helper, Dunlap, to watch for traffic on that side, and that he proceeded in the intersection in reliance on Dunlap's statement that it was safe.

As to whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence, and while the rule of law does not vary, the facts to which the law is applicable always present divergent circumstances and facts which, in

most instances, are wholly dissimilar. This court in *Bartolucci* v. *Falleti*, 382 Ill. 168, has defined wilfulness and wantonness in the following language: "Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. *Streeter* v. *Humrichouse*, 357 Ill. 234; *Jeneary* v. *Chicago and Interurban Traction Co.* 306 Ill. 392." In the instant case the evidence, when taken in its light most favorable to plaintiffs, reveals no wilfulness or wantonness as thus defined.

The plaintiffs contend the court should never direct a verdict if there is a scintilla of evidence to support the plaintiff's claim and cite, among others, the case of *Knudson* v. *Knudson*, 382 Ill. 492. It would seem the *Knudson case* holds to the contrary. There we said, "The rule known as the 'scintilla of evidence rule,' applied in some jurisdictions,—that is, that if there is even a scintilla of evidence tending to support plaintiff's case, the cause must be submitted to the jury,—is not followed in this State." The court then announces the well-settled rule in Illinois, "The test of the existence of the right to have the cause submitted to a jury, as recognized in this State, is whether there is evidence in the record which, with all its reasonable inferences, taken in the aspect most favorable to the contestant, may be said to be sufficient in law to support the cause of action." To the same effect is *Mueller* v. *Elm Park Hotel Co.* 398 Ill. 60. Here the evidence gives rise to no inferences from which wilful and wanton conduct,

as defined in Illinois, can be imputed to defendant, and the trial court correctly directed a verdict on the wilful and wanton count.

It is next contended by the defendant that he is immune from suit on the facts here by virtue of his employment by the State. There being no evidence of wilful and wanton conduct, the question is then presented as to whether the defendant is liable for his acts of ordinary negligence. That the State is immune can hardly be questioned. Section 26 of article IV of the constitution of 1870, states: "The state of Illinois shall never be made defendant in any court of law or equity." Neither is a State agency liable. *Minear* v. *State Board of Agriculture,* 259 Ill. 549.

Plaintiffs contend that defendant, Herbert Williams, cannot be classified other than as an employee acting in a ministerial capacity and cite the case of *Tearney* v. *Smith,* 86 Ill. 391, in support of their contention that the construction and repairing of a public highway is a ministerial job. In the *Tearney case,* the defendants there being highway commissioners, constructed a drain along a roadway in a manner so as to flood and damage the plaintiff's land. Negligence was established and the court said, "The work of constructing or repairing a public highway is not a judicial, but a ministerial, act, and must be performed with a proper regard to individual rights as well as the public accommodation. * * * For the negligent performance of ministerial acts they are personally responsible if injury results to others." The import of that decision is explained in the case of *Nagle* v. *Wakey,* 161 Ill. 387, where plaintiff was injured when using a bridge on a public highway. Defendants in that case were highway commissioners and had allegedly constructed and maintained the bridge in such a negligent manner as to cause the injury complained of. The court there discussed the *Tearney case* on the ground that the duty owed the plaintiff in that case was not a public one but was a duty to him as an adjoining proprietor and

not as a member of the general public; and held that defendants were not liable for their negligence in performing their duty to the public so long as they exercised their judgment and discretion fairly and honestly.

In the instant case it is apparent the duty being performed by the defendant was a duty owed the general public, whereas in the *Tearney case,* the duty to use reasonable care in constructing the drain so as to avoid flooding plaintiff's land in no way affected the public right to use the road, and the injuries sustained by plaintiff were personal to him and to no other by virtue of his ownership of the adjoining land.

Plaintiffs cite the case of *People* v. *Bartels,* 138 Ill. 322, which pertains to the duty imposed on an officer who is engaged in purely ministerial duties where nothing remains for the exercise of judgment or discretion. In *People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599, the court defines as an officer, generally, one who takes an oath of office, and an employee as one who does not, and holds that the duties of a mere employee are purely ministerial. The facts in these two cases are not analagous to the facts in the present case. The language of the *Coffin case* does not purport to establish, as an unvarying test of ministerial duty, the absence of an oath of office. The true test is whether the duty is "absolute, certain and imperative, involving merely the execution of a set task," the time, mode and occasion of its performance being described and defined by law with such certainty that nothing is left to judgment or discretion as announced in the *Bartels case.*

In the instant case the evidence reveals that defendant was employed by the State Highway Department, that he was assigned by his superiors to be "maintenance man" on a designated strip of some 21 miles of highway. He was assigned other men as helpers and provided with equipment, including the snow plow, with which to perform his various duties. He was, in general, left to his own judgment as to

when and where he should perform his duties in his assigned territory and as to the manner in which he would use the State-owned equipment furnished him. Under such circumstances his duties were not within the definition of "ministerial" as announced in the *Bartels case*. Defendant is conceded to be the agent of the State and there is no contention that the removing of the snow from the public highway at the place and time of the collision was not within the duties with which defendant was charged. The removal of snow and ice from one of the main traveled highways is absolutely essential to the welfare and safety of the traveling public. There are few, if any, functions of public responsibility which require more prompt and effective action on the part of those charged with such duty. That the removal of such snow and ice is a governmental as distinguished from a ministerial function appears as a reasonable proposition when circumscribed by conditions necessitating the overcoming of the hazard of snow and ice, with its attending danger to life and property, especially when it is of such magnitude that private means are not adequate to deal with the problem, and where the public welfare demands and the public relies on the State to meet the problem. The defendant, as an agent of the State, was charged with a duty that was in no way fixed as to time, mode or occasion and his duty was not ministerial in character.

The defendant, having been engaged in duties of a governmental character, requiring the exercise of discretion and judgment, he is not liable for defects in that judgment in carrying out his duties. (*Taylor* v. *City of Berwyn,* 372 Ill. 124.) In recognition of the necessity for freedom of action on the part of persons charged with the maintenance of highways, the legislature has removed, by section 23(d) of the Uniform Traffic Act, (Ill. Rev. Stat. 1947, chap. 95½, par. 120,) certain requirements which are by law required of the general public.

494

After analyzing this record in all of its phases, we are of the opinion the Appellate Court erred in reversing the judgment of the trial court directing a verdict. The judgment of the Appellate Court, therefore, is reversed, and the judgment of the trial court affirmed.

*Appellate Court reversed; circuit court affirmed.*

Mr. Justice Crampton, dissenting.