GEORGE GOCHEFF, SR., Indiv. and as Ex'r of the Estate of Ella Gocheff, Deceased, Plaintiff-Appellant, *v.* STATE COMMUNITY COLLEGE OF EAST ST. LOUIS *et al.*, Defendants-Appellees.

Fifth District    No. 78-99

Opinion filed February 23, 1979.—Rehearing denied March 21, 1979.

JONES, J., dissenting.

Cadagin, Cain & Tognarelli, of Collinsville, for appellant.

Thomas O. Falb, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellees.

180

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This is an appeal from an order of the circuit court of St. Clair County allowing the motion of defendants State Community College of East St. Louis and Gerald Crenshaw to quash service of summons.

This action was instituted by George Gocheff, Sr., individually and as executor of the estate of Ella Gocheff, deceased, his wife. Plaintiff alleged that on June 23, 1976, he was operating and his wife was a passenger in an automobile proceeding in a northerly direction on Route 163 near its intersection with Route 460 in St. Clair County, Illinois. At the same time it was alleged that defendant Gerald Crenshaw, an employee of the State Community College of East St. Louis, was driving an automobile owned by the Community College in an easterly direction on Route 460. Plaintiff further alleged that as a result of Crenshaw's negligence committed while acting as the agent of State Community College of East St. Louis, a collision occurred between the two vehicles causing injury to himself and causing injuries resulting in the death of Ella Gocheff on October 1, 1976. The complaint sought monetary damages for which defendants were alleged to be jointly and severally liable.

Contending that the trial court lacked jurisdiction over the subject matter of the action pursuant to section 8 of the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.8(d)), defendant entered a special limited appearance and moved to quash service of summons and the complaint. The trial court granted the motion and quashed service.

■■ Initially, we entertain some doubt as to whether defendants' special limited appearance and the attendant motion to quash service was the proper procedure to attack subject matter jurisdiction in this case. Section 20 of the Civil Practice Act provides merely that a special appearance may be entered "for the purpose of objecting to the jurisdiction of the court *over the person of the defendant.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110, par. 20(1).) Nevertheless, we note that special limited appearances have been employed in other reported cases without comment. (*Powers v. Telander,* 129 Ill. App. 2d 10, 262 N.E.2d 342; *Zalduendo v. Zalduendo,* 45 Ill. App. 3d 849, 360 N.E.2d 386; *Golden v. Holaday,* 59 Ill. App. 3d 866, 376 N.E.2d 92.) In any case, subject matter jurisdiction may not be waived and it is generally said that it may be raised at any time and in any manner which properly calls the court's attention to that fact. (*Wetzel v. County of Hancock,* 143 Ill. App. 178.) Thus, for purposes of review, we shall consider the appearance as a motion to dismiss and the relief granted as a dismissal of the complaint.

The sole question for our review is whether the trial court erred in finding that this was an action against the State of Illinois and then

declining to take jurisdiction over the subject matter. Section 4 of article XIII of the 1970 Illinois Constitution provides:

> "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished."

Section 1 of "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1973, ch. 127, par. 801) retained sovereign immunity except as provided in the Court of Claims Act. Section 8 of the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.8), in effect at the time of the accident in question, established the jurisdictional guidelines of the Illinois Court of Claims. Subparagraph (d) of that act dealt specifically with actions sounding in tort and provided in pertinent part:

> "All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against the Medical Center Commission, the Board of Trustees of the University of Illinois, the Board of Trustees of Southern Illinois University, the Board of Regents of Southern Illinois University, the Board of Regents of the Regency Universities System or the Board of Governors of State Colleges and Universities; * * *."

Since defendant State Community College of East St. Louis is not specifically enumerated in the above statute and is not encompassed within any of the State agencies named, the narrow issue as to this defendant becomes whether it was properly considered a division of the "State" as used in the above statute.

■ Illinois courts have often stated that whether a particular suit falls within the prohibition of actions brought against the State is dependent upon the issues involved and the relief sought. (*Scoa Industries, Inc. v. Howlett*, 33 Ill. App. 3d 90, 337 N.E.2d 305; *Moline Tool Co. v. Department of Revenue*, 410 Ill. 35, 101 N.E.2d 71.) In this case the plaintiff seeks monetary damages for the negligent operation of a vehicle by one of the defendant State Community College's employees, also named as a defendant to this suit. Our analysis must not stop here, however. Not all public bodies closely related to the State are considered part of the State and therefore immune from suit. Whether an action brought against an officer or agent of the State is actually an action against the State itself depends upon the degree of administrative and financial autonomy which the agency or department possesses. As explained by the Supreme Court of Illinois in *People v. Illinois State Toll Highway Com.*, 3 Ill. 2d 218, 227, 120 N.E.2d 35:

> "The multiplicity of factors which the courts have considered in reaching a decision of this question makes it impracticable to

extract a simple rule which will fit every situation. The factor entitled to most weight, in our opinion, is that under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the commission [Illinois State Toll Highway Commission]. That factor, together with the largely independent control of the commission over the construction and maintenance of the proposed toll roads, permits it to be regarded as an independent entity so far as subjection to suit is concerned."

For example, in *People ex rel. Board of Trustees v. Barrett*, 382 Ill. 321, 46 N.E.2d 951, the supreme court held that the University of Illinois, which at that time had not been specifically afforded immunity from suit in circuit court by the legislature, possessed such a high degree of autonomy in the management of its duties and finances that it could not be considered part of the State for purposes of sovereign immunity.

■ The Public Community College Act, which became effective October 1, 1973 (Ill. Rev. Stat. 1973, ch. 122, par. 101 *et seq.*), established the Illinois Community College Board (referred to in the Act as the "State Board") which in turn established the defendant, State Community College of East St. Louis, pursuant to section 2—12.1 of the Public Community College Act (Ill. Rev. Stat. 1973, ch. 122, par. 102—12.1). At the time of the accident in question, the State Board was granted by statute the powers and duties vis-a-vis the defendant that were otherwise conferred on community college boards in certain enumerated sections of article III of the Act. One of these sections, 3—29, provides that it is the duty of the board to indemnify and protect board employees against death, bodily injury and property damage claims and suits when damages are sought for alleged negligent or wrongful acts while such employee was acting in the scope of his employment and to insure against any loss or liability of the employee arising out of such suit. (Ill. Rev. Stat. 1975, ch. 122, par. 103—29.) As explained in plaintiff's memorandum in opposition to defendant's motion to quash in this case, the State Board had in fact contracted with a private insurance carrier for liability coverage against just such claims as this. Plaintiff also argued that no provision existed whereby general funds of the State of Illinois would be reached for the payment of claims against the Board of State Community College. Funding for community colleges in general under the Public Community College Act constitutes a complex legislative scheme whereby operating expenses of the various community colleges are to be paid from bonds, tax levies and reimbursement from the State for student tuition and other fees. While not all provisions of article III apply to the State Board in its capacity as the temporary Community College Board for State Community College of East St. Louis (Ill. Rev. Stat. 1975, ch. 122, par. 102—12.1), we think it is apparent from the legislative scheme as

a whole that the general funds of the State will not be reachable to satisfy any judgment rendered in this case. The mere fact that the State Board was responsible for the maintenance and operation of defendant Community College at the time of the accident does not, in our opinion, render defendant immune from suit in circuit court.

In assessing the scope of defendant's administrative autonomy we acknowledge that acting as the temporary community college board for defendant community college, the State Board is chargeable with, among other things, the determinations of the academic term for the institution (Ill. Rev. Stat. 1975, ch. 122, par. 102—12.1, par. 103—16), the admission of students according to space and qualifications (par. 103—17), the maintenance of records regarding State apportionment claims (par. 103—22), the adoption and enforcement of all necessary rules for the management and government of the college (par. 103—25), the provision of auxiliary services for employees and students including purchasing, leasing or contracting for such services (par. 103—31.1), the establishment of tenure policies and causes for removal of teachers and administrative personnel (par. 103—32), the purchase of one or more sites for college purposes by condemnation or otherwise, title to be taken and held in the name of the board (par. 103—36), the construction or lease of suitable buildings and the issuance of bonds for such purpose (par. 103—37), the purchase or lease of equipment, machinery or other personal property, rooms, building and land which may be required when authorized by the vote of two-thirds of the members of the board (par. 103—38), the acceptance of Federal funds (par. 103—39), the acceptance of gifts, grants, devises or bequests (par. 103—39.1), the provisions of educational services including the power to enter into contracts with any person, organization, association or governmental agency for such purpose (par. 103—40), and the employment of personnel (par. 103—42). This outline of the powers and duties of the defendant likewise convinces us that the State Board, acting as a temporary community college board for State Community College of East St. Louis, possesses that degree of administrative autonomy sufficient to make it amenable to suit in circuit court.

We must also consider the propriety of the court's dismissal of plaintiff's action against Gerald Crenshaw. We note that in general employees of the State of Illinois are not exempt from liability for their own acts of negligence merely because they were acting within the scope of their employment. (*Madden v. Kuehn*, 56 Ill. App. 3d 997, 372 N.E.2d 1131.) The court in *Madden* recognized two rules which may be employed to render State officers or employees immune from suit, only one of which is applicable to the instant situation. Thus, where the suit against the officer or employee is, in fact, an action against the State itself,

the action is maintainable only in the Court of Claims. In addition to the factors discussed above, if the relief sought could operate to control the action of the State or subject it to liability, the suit is deemed to be against the State. (*Madden v. Kuehn; Struve v. State Department of Conservation*, 14 Ill. App. 3d 1092, 303 N.E.2d 32; *People ex rel. Maciuba v. Cheston*, 25 Ill. App. 3d 224, 323 N.E.2d 40.) In *Madden* suit was brought against various State officials as well as against the estate of a State-employed physician whose alleged negligence in attending an inmate of a State correctional facility caused the latter's death. Reversing the circuit court's dismissal of that portion of the suit brought against the physician's estate, the court of appeals reasoned that the duties allegedly breached by the physician were those which every doctor owes his patient, rather than obligations incurred solely by virtue of holding a public office. So too, the acts of negligence alleged to have been committed by Crenshaw relate not to obligations incurred solely by virtue of his employment with State Community College of East St. Louis, but rather to duties automobile drivers owe to one another. Under these circumstances award of monetary damages in this action would in no way control the action of the State and, as discussed above, the general funds of the State will not be available to satisfy any judgment so that the State itself will not be subjected to liability. Thus, under the authority of *Madden v. Kuehn*, the circuit court of St. Clair County erred in dismissing the action brought against Gerald Crenshaw.

Finally, we are aided in interpreting the previous legislative intent regarding the parameters of the term "State" as used in the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.8) by an amendment to the Public Community College Act which became effective August 23, 1977, subsequent to the accident and to the institution of this proceeding. Section 4—8 of this Act (Ill. Rev. Stat. 1977, ch. 122, par. 104—8) provides simply:

> "The Illinois Court of Claims shall have exclusive jurisdiction of all claims either in tort or contract against the experimental district and its board of trustees [State Community College of East St. Louis]."

Defendant contends that this legislation signifies that the General Assembly was merely codifying what it had previously intended. We disagree. It is presumed that in materially amending a statute, the legislature intended to effect a change in the law as it formerly existed. As we recently stated in *In re Estate of Zimmerman*, 63 Ill. App. 3d 560, 562, 380 N.E.2d 434, 436:

> "Where a statute is amended, it will not be presumed that the difference was due to oversight or inadvertence on the part of the

legislature, but that every amendment of a statute is made for some purpose, and effect must be given the amended law in a manner consistent with the amendment. [Citation.]"

In addition, absent express language declaring it to be retroactive, an amendatory act is usually construed as perspective only. (*Board of Trustees v. Illinois Community College Board*, 63 Ill. App. 3d 969, 380 N.E.2d 988.) Defendants have cited no authority to overcome these principles. Had the General Assembly always intended that defendant Community College be considered part of the "State" for purposes of the Court of Claims Act, it would not have been necessary to pass this piece of legislation. We will not presume that the legislature performed a useless act.

For the foregoing reasons we hold that the instant suit was maintainable against both defendants in the circuit court of St. Clair County and accordingly reverse the action taken by the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

KUNCE, J., concurs.

Mr. JUSTICE JONES, dissenting:

I agree with the majority that the narrow issue in this case is whether defendant State Community College of East St. Louis is a division of the State within the purview of section 8(c) of the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.8(c)), which places jurisdiction of "[a]ll claims against the State * * *" in the Illinois Court of Claims.

However, I disagree with the conclusion reached by the majority for the defendant college is a State agency and I accordingly respectfully dissent.

It is correct to say, as the majority has said, that whether an action brought against an officer or agent of the State is actually an action against the State itself depends upon the degree of administrative and financial autonomy which the agency possesses and that the factor which is entitled to most weight is whether the general funds of the State can be reached to satisfy an obligation of the agency.

There is no question that the Illinois Community College Board ("State Board") created by section 2—1 of the Public Community College Act of 1965 (Ill. Rev. Stat. 1975, ch. 122, par. 102—1) is an agency of the State of Illinois. The majority even concedes the point, as they must.

Furthermore, there is no question that the defendant community college district was created by a special act of the legislature which

amended the Public Community College Act of 1965 by adding section 2—12.1 in 1973 (Ill. Rev. Stat. 1975, ch. 122, par. 102—12.1, effective Oct. 1, 1973).

Having acknowledged the foregoing the majority seeks to disassociate the State Board from the operation and management of the defendant college. Such cannot be done.

Even the name of the defendant college denotes it as an agency of the State of Illinois: State Community College of East St. Louis. But, the name aside, there are many more indicia that the defendant college is a State agency and that consequently the instant case is a suit against the State.

Initially, and of paramount importance, the statute providing for the creation of the college (section 2—12.1 of the Act) makes it obligatory upon the State Board to "establish, maintain and operate" the college.

For purposes of operating the defendant college the same creating statute confers upon the State Board (not the college) certain enumerated statutory powers which are elsewhere conferred upon other community college boards. But notably lacking from such enumerated powers are those conferred upon other community college boards to levy and collect taxes (section 3.20 of the Act), borrow money and issue bonds (section 3.33 of the Act) and invest funds of the district (section 3.47 of the Act).

In fact, the State Community College of East St. Louis is the only community college in the State of Illinois without a local tax base. Funds for its operation are supplied by the State Board by budget requests submitted to the State Board of Higher Education pursuant to section 8 of "An Act creating a Board of Education * * *" (Ill. Rev. Stat. 1975, ch. 144, par. 188). Upon approval of the budget by the Board of Higher Education and appropriation by the legislature, the funds are paid from the general revenue fund of the State pursuant to sections 7 and 10(15) of "An Act in relation to State finance" (Ill. Rev. Stat. 1975, ch. 127, pars. 143 and 146(15)).

The majority asserts that funds of the State could not be reached to satisfy any judgment that might be rendered for the plaintiff in this case. They apparently attach great importance to the fact that there is a policy of insurance extant which will be available to satisfy a judgment.

The presence (or absence) of insurance coverage in this case is entirely gratuitous and is not a factor to be weighed in considering whether the State Community College of East St. Louis is an agency of the State. The majority seems to equate the presence of insurance in this case with the removal of municipal tort immunity to the extent of insurance coverage as provided in section 9—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 9—103). No similar legislative scheme for tort

immunity or waiver thereof to the extent of insurance coverage is provided in the Public Community College Act for the State Community College of East St. Louis or any other community college in the State. The presence of insurance in the case is anything but established. The only reference to it is a bare assertion of the matter in a memorandum of law filed by the plaintiff with the trial court. No particulars, including amounts of coverage, are matters of record or are alleged in any pleadings.

Plainly, general funds of the State could be reached to satisfy any judgment rendered in favor of plaintiff. There is no local tax base for defendant college and there is no provision in the law for them to levy and collect taxes or issue bonds to pay a judgment. All their funds are supplied by the State. There is no other source of funds to satisfy a judgment. If insurance is available, it can, of course, be utilized. However, even if a policy of insurance were available it might be insufficient in amount, the company might go insolvent, or, for a myriad of reasons the company might refuse payment or be unable to make payment. In any of these events the general funds of the State would be the only source of funds for payment of a judgment.

The majority places reliance upon the fact that the Public Community College Act was amended by the legislature, effective August 23, 1977, so as to unequivocally place jurisdiction of all claims against the defendant college with the Court of Claims (Ill. Rev. Stat. 1977, ch. 122, par. 104—8). They follow that line of cases which hold that where the legislature makes a material amendment to a statute that it was the intent to change the law. But that reasoning does not follow here for the simple reason that had not the State Community College of East St. Louis already been an agency of the State of Illinois the 1977 addition could not have been adopted. Certainly the 1977 addition did not create a State agency where none existed before.

I would affirm the trial court.