574 N.E.2d 1222 (1991)
215 Ill. App.3d 314
158 Ill.Dec. 829
AMERICAN FAMILY INSURANCE COMPANY, as Subrogee of Ismael T. Elizondo, Plaintiff-Appellee,
v.
Robert E. SEEBER, Defendant-Appellant.
No. 2-90-1004.
Appellate Court of Illinois, Second District.
June 25, 1991.
Roland W. Burris, Atty. Gen., Deborah L. Ahlstrand (argued), Asst. Atty. Gen., Robert Ruiz, Sol. Gen., Rosalyn B. Kaplan, Asst. Atty. Gen., Chicago, for Robert E. Seeber.
Ryan & Ryan, Ltd., Kathleen M. Ryan (argued), Waukegan, for American Family Ins. Co.
Justice NICKELS delivered the opinion of the court:
Defendant, Robert Seeber, appeals from a judgment entered in favor of plaintiff, American Family Insurance Company, as subrogee of Ismael Elizondo, in a negligence action. After a bench trial, defendant was found to be 55% at fault and liable for the damage to Elizondo's automobile *1223 as a result of the collision between that vehicle and the State's snowplow driven by defendant in the course of his employment as a roadway maintainer for the State. Defendant contends that: (1) the circuit court was without subject-matter jurisdiction to adjudicate plaintiff's claim because the State was the real party in interest, and, as such, plaintiff's claim could only be brought in the Court of Claims under the doctrine of sovereign immunity; and, alternately, (2) defendant was immune from suit individually under the doctrine of public official's immunity. We affirm.
Defendant testified that on the evening of December 28, 1987, he was traveling eastbound on Route 137 in Libertyville approaching the intersection of Butterfield Road, which was controlled by a traffic light. Both roads were two lanes in each direction, with westbound Route 137 having an additional westbound left-turn lane at the intersection. It had been and was snowing, and defendant was operating a six-wheel truck equipped with a snowplow in the course of his employment by the Illinois Department of Transportation. The snowplow was equipped with two yellow oscillating lights, two red flashing taillights, red marking lights on its side, and four headlights, all of which were in working order and functioning. As defendant approached the intersection, he noticed a disabled car resting against the traffic signal located on the median on the west side of the intersection and which was partially blocking the innermost westbound lane of Route 137. Defendant turned left through the intersection, to the east of the disabled car so that his vehicle was between the disabled car and approaching westbound traffic. He thereby also blocked the inner westbound lane to westbound traffic while providing a more visible barricade of that lane to approaching westbound traffic. He stopped the snowplow part way through the turn and reversed before coming to rest in this position. Defendant did not see Elizondo's vehicle until a split second before the collision.
Elizondo was traveling westbound on Route 137 in a pickup truck. He saw the snowplow begin to enter the intersection from approximately one-half mile away and slowed from 40 to 30 miles per hour before he reached the intersection. He was unable to avoid the snowplow as it continued its turn through the intersection because of the snow-covered road conditions. Elizondo's vehicle struck the blade of the snowplow as his vehicle entered the intersection.
Thus, testimony was conflicting as to whether defendant was still in the process of turning or whether he had stopped at the moment of impact. Testimony was equally conflicting as to the location of the snowplow in the innermost westbound lane, the location of Elizondo's vehicle in the outer westbound lane, and the weather conditions. However, the police report of the accident, to which the parties stipulated and which was entered into evidence, stated that defendant was turning at the time of the collision and that his attention as he turned had been on the disabled car. The diagram included as part of the police report indicated that defendant's vehicle had been partially blocking the outer westbound lane. The police report, however, belied Elizondo's assertion that the roads were clear and indicated that they were in fact snow and ice covered, and it was snowing at the time of the collision.
Plaintiff paid Elizondo $3,721 to repair damage to his vehicle and, as his subrogee, filed a complaint asserting both common-law negligence and statutory violations as the basis of recovery against defendant. Defendant answered the complaint and raised an affirmative defense of public official's immunity. The cause was set for mandatory arbitration, and, on the day the arbitration proceeding was scheduled to begin, defendant moved for judgment on the pleadings asserting that public official's immunity precluded a judgment of liability against him. Defendant also, for the first time, similarly asserted the defense of sovereign immunity.
The trial court denied defendant's motion, and, although barring defendant's defense of public official's immunity as to the common-law negligence claims of its complaint, the court ordered that defendant's defense of public official's immunity as to *1224 the statutory violations be presented at the arbitration proceeding. After entry of an award of damages by the arbitrators in favor of plaintiff, defendant rejected the award and proceeded to trial. It is the judgment of the court at that bench trial in favor of plaintiff that defendant now appeals, asserting that: (1) under the doctrine of sovereign immunity, the circuit court was without jurisdiction to hear plaintiff's claims because the defendant was merely a nominal party, and the State of Illinois was the party vitally interested in the outcome; and (2) if the doctrine of sovereign immunity is inapplicable, the doctrine of public official's immunity nevertheless applies to defendant's discretionary conduct in operating the snowplow, and, thus, defendant is immune from liability arising from such operation.
Sovereign immunity is a common-law doctrine based on the concept that the king could not be made subject to suit without his permission. (Oppe v. State of Missouri (1988), 171 Ill.App.3d 491, 495, 121 Ill.Dec. 882, 525 N.E.2d 1189.) The 1970 Illinois Constitution abolished common-law sovereign immunity but, however, delegated the power to recreate such immunity to the legislature. (Ill. Const.1970, art. XIII, § 4.) The legislature exercised this power (Ill.Rev.Stat.1987, ch. 127, par. 801) and provided that actions sounding in tort against the State must be brought in the Court of Claims. (Ill.Rev.Stat.1987, ch. 37, par. 439.8(d).) Therefore, determination of the proper jurisdiction focuses on whether the action is in fact one that subjects the State to liability or seeks to control the State (Kaiser v. Emrich (1980), 84 Ill. App.3d 775, 777, 40 Ill.Dec. 506, 406 N.E.2d 207), as opposed to one that merely subjects a State employee to liability for his own acts of negligence while acting within the scope of his State employment. Bartholomew v. Crockett (1985), 131 Ill.App.3d 456, 463, 86 Ill.Dec. 656, 475 N.E.2d 1035.
Claims based on the negligent operation of an automobile are outside the doctrine of sovereign immunity. (Bartholomew, 131 Ill.App.3d at 462, 86 Ill.Dec. 656, 475 N.E.2d 1035, citing Hering v. Hilton (1958), 12 Ill.2d 559, 147 N.E.2d 311; Gocheff v. State Community College (1979), 69 Ill.App.3d 178, 25 Ill.Dec. 477, 386 N.E.2d 1141; Pree v. Hymbaugh (1959), 23 Ill.App.2d 211, 162 N.E.2d 297.) Sovereign immunity provides protection from suit to a governmental employee only when the alleged acts of negligence relate to an obligation incurred solely by virtue of employment by the State. (Bartholomew, 131 Ill.App.3d at 463, 86 Ill.Dec. 656, 475 N.E.2d 1035, citing Gocheff, 69 Ill.App.3d at 184, 25 Ill.Dec. 477, 386 N.E.2d 1141.) In contrast, negligence that may arise from the operation of an automobile is based on the duties owed by each driver, regardless of employment, to other drivers. (Bartholomew, 131 Ill.App.3d at 463, 86 Ill.Dec. 656, 475 N.E.2d 1035, citing Gocheff, 69 Ill.App.3d at 184, 25 Ill.Dec. 477, 386 N.E.2d 1141.) Defendant asserts, however, that operation of a vehicle that is essential to performance of a governmental employee's obligations of employment is distinct from the operation of an automobile that is merely incidental to such employment. Defendant, thus, urges that the general rule that governmental employees are subject to individual suit for negligent operation of their vehicles is inapplicable.
Central to the arguments of both parties are our decisions in Madden v. Kuehn (1978), 56 Ill.App.3d 997, 14 Ill.Dec. 852, 372 N.E.2d 1131, and Kaiser v. Emrich (1980), 84 Ill.App.3d 775, 40 Ill.Dec. 506, 406 N.E.2d 207. In Madden, we held that a duty that arises independent of any obligation imposed by public office is not subject to sovereign immunity. (Madden, 56 Ill.App.3d at 1001, 14 Ill.Dec. 852, 372 N.E.2d 1131.) Thus, under Madden, defendant was not immune to suit in the circuit court for negligence that arose independent of his obligations as a State maintenance worker (see Madden, 56 Ill.App.3d at 1001, 14 Ill.Dec. 852, 372 N.E.2d 1131), and the duty to operate his vehicle in a safe manner was such an independent duty. Bartholomew, 131 Ill.App.3d at 463, 86 Ill.Dec. 656, 475 N.E.2d 1035; Gocheff, 69 Ill.App.3d at 184, 25 Ill.Dec. 477, 386 N.E.2d 1141; see also, e.g., Hering, 12 Ill.2d 559, 147 N.E.2d 311; Currie v. Lao (1990), 198 Ill.App.3d *1225 625, 144 Ill.Dec. 851, 556 N.E.2d 318; Pree v. Hymbaugh (1959), 23 Ill.App.2d 211, 162 N.E.2d 297.
However, Madden noted the existence of the defendant's liability insurance in finding that the State was not the "real party in interest." (Madden, 56 Ill.App.3d at 1001, 14 Ill.Dec. 852, 372 N.E.2d 1131.) Kaiser, which defendant urges us to overrule here, resolved any question left undecided by Maddens reference to insurance as a factor in deciding whether the State possessed a vital interest in the asserted claim.
In considering the certified and limited question of interpretation of the self-insurance provision of the Civil Administrative Code of Illinois (Code) presented in Kaiser, we specifically addressed the effect of insurance coverage on the subject-matter jurisdiction of the circuit court to hear negligence claims against individuals who happened to be governmental employees. (Kaiser, 84 Ill.App.3d at 776, 40 Ill.Dec. 506, 406 N.E.2d 207; Ill.Rev.Stat.1989, ch. 127, par. 63b4(k).) The Code requires the State to defend, indemnify and hold harmless an employee against claims that are filed "in any proper judicial forum" and that arise from acts or omissions in the course of his employment. (Kaiser, 84 Ill. App.3d at 777, 40 Ill.Dec. 506, 406 N.E.2d 207.) We held that this clear and unambiguous language created a specific exception to the requirement that suits only nominally against a State employee be brought only in the Court of Claims. (Kaiser, 84 Ill.App.3d at 777, 40 Ill.Dec. 506, 406 N.E.2d 207.) Thus, Kaiser applied the reasoning of Madden specifically to the duties owed by each driver to other drivers and, further, recognized the codification and expansion of that reasoning as contained in the self-insurance provision.
Defendant asserts that, under our decision in Kaiser, the circuit court's jurisdiction over claims against State employees is subject to the whim of the director of central management and that the circuit court is only vested with jurisdiction when the director elects on behalf of the State to act as self-insurer. Defendant further urges that such result is inconsistent with the need for uniform application of jurisdictional requirements. However, such assertion mistakes the basic import of Kaiser.
Kaiser recognized that subject-matter jurisdiction to determine suits involving the individual negligence of State employees is always vested in the circuit court. The presence of insurance has long been held irrelevant to a determination of jurisdiction. (Watson v. St. Annes Hospital (1979), 68 Ill.App.3d 1048, 1053-54, 25 Ill. Dec. 411, 386 N.E.2d 885.) Although suits against State employees covered under a self-insurance plan may involve the State's interest or exert some control over its conduct, such interest and control are in the State's capacity as insurer, rather than in its sovereign capacity. Only when the State is itself sued as an insurer does sovereign immunity strip the circuit court of subject-matter jurisdiction and instead place jurisdiction in the court of claims. (Kaiser, 84 Ill.App.3d at 777, 40 Ill.Dec. 506, 406 N.E.2d 207; Ill.Rev.Stat.1989, ch. 127, par. 63b4(k).) Kaiser merely explained the clear and unambiguous legislative pronouncement that the mere presence of self-insurance and its possible resultant impact on the nonsovereign interests of the State does not strip such jurisdiction from the circuit court. Thus, the inconsistency urged by defendant as a basis to overrule Kaiser is based on a contorted and unsupported reading of that precedent, which we reject.
Defendant further urges us to follow the Appellate Court for the Third (third district) and Fourth (fourth district) Districts, which have precluded suit of a State employee based on negligent operation of a vehicle that was integral to that employee's employment obligations. However, in the fourth district's decision in Townsend v. Gaydosh (1990), 197 Ill.App.3d 339, 143 Ill. Dec. 713, 554 N.E.2d 648, the defendant's alleged negligence was based on noncompliance with statutory requirements, which the court dismissed as inapplicable to a person performing work on the roadway as provided in the same statute. (Townsend, 197 Ill.App.3d at 342, 143 Ill.Dec. 713, 554 N.E.2d 648; Ill.Rev.Stat.1987, ch. 95½, par. *1226 11-205(f).) The court further dismissed plaintiff's allegation of common-law negligence in reliance on Mower v. Williams (1949), 402 Ill. 486, 84 N.E.2d 435, holding that "[h]ighway maintenance workers * * * [are] agents of the State, whose acts require official discretion and judgment." (Townsend, 197 Ill.App.3d at 342, 143 Ill. Dec. 713, 554 N.E.2d 648, citing Mower, 402 Ill. at 493, 84 N.E.2d 435.) However, Mower was effectively overruled in Hering, 12 Ill.2d 559, 147 N.E.2d 311. See Madden, 56 Ill.App.3d at 1001, 14 Ill.Dec. 852, 372 N.E.2d 1131 (recognizing invalidity of Mower rationale and adopting "actions and duties unique to a particular public office" as standard for sovereign immunity); Pree, 23 Ill.App.2d at 217-18, 162 N.E.2d 297 (Hering directly passed on erroneous holding of Mower).
Nor do the cases from the third district offer defendant the support that he seeks. In Prince v. McElroy (1990), 207 Ill.App.3d 190, 152 Ill.Dec. 152, 565 N.E.2d 685, the third district merely adopted the flawed reasoning of Townsend. However, in its earlier decision in Currie v. Lao (1990), 198 Ill.App.3d 625, 144 Ill.Dec. 851, 556 N.E.2d 318, appeal allowed (1990), 133 Ill.2d 553, 149 Ill.Dec. 318, 561 N.E.2d 688, the third district recognized that the duty of care of a driver arises independently of the obligations of public office and is, thus, not subject to sovereign immunity. (Currie, 198 Ill.App.3d at 631, 144 Ill.Dec. 851, 556 N.E.2d 318.) Thus, these precedents offer no basis on which to overrule our decision in Kaiser, as urged by defendant.
Having determined that defendant did not enjoy sovereign immunity and was amenable to suit in the circuit court, we turn to defendant's second contention that he enjoyed public official's immunity for his conduct in operating a snowplow. Public official's immunity provides that State officials and employees are fully protected from liability for actions taken in the exercise of their official discretion. (People v. Patrick J. Gorman Consultants, Inc. (1982), 111 Ill.App.3d 729, 67 Ill.Dec. 540, 444 N.E.2d 776.) However, ministerial, rather than discretionary, acts are not protected by the doctrine of public official's immunity. Mora v. State, (1977), 68 Ill.2d 223, 233, 12 Ill.Dec. 161, 369 N.E.2d 868.
Cases holding that State employees' conduct was within their official discretion and subject to public official's immunity have generally involved actions and duties unique to a particular public office. (Madden, 56 Ill.App.3d at 1001, 14 Ill.Dec. 852, 372 N.E.2d 1131.) The actual basis for distinction between discretionary and ministerial conduct is the underlying public policy of a public official's need for freedom to exercise his judgment based on his "best perception of public needs." (Madden, 56 Ill.App.3d at 1002, 14 Ill.Dec. 852, 372 N.E.2d 1131, citing Kelly v. Ogilvie (1965), 64 Ill.App.2d 144, 147, 212 N.E.2d 279, aff'd (1966), 35 Ill.2d 297, 220 N.E.2d 174.) Mere exercise of judgment and skill do not confer "discretionary" status upon conduct. (Madden, 56 Ill.App.3d at 1002, 14 Ill.Dec. 852, 372 N.E.2d 1131.) Rather, an act must be "essentially `governmental in character.'" Madden, 56 Ill.App.3d at 1002, 14 Ill.Dec. 852, 372 N.E.2d 1131, citing Mora, 68 Ill.2d at 233, 12 Ill.Dec. 161, 369 N.E.2d 868; Lusietto v. Kingan (1969), 107 Ill.App.2d 239, 244, 246 N.E.2d 24.
Defendant asserts that the operation of his vehicle was an act of official discretion and, therefore, he is immune from suit based on negligence arising from such operation as a public official. However, each of the cases cited by defendant in support of this assertion is distinguishable.
Initially, although a corrupt or malicious motive will operate to deny immunity to a public official acting in a discretionary manner (Larson v. Darnell (1983), 113 Ill. App.3d 975, 977, 69 Ill.Dec. 789, 448 N.E.2d 249), the question before us is whether the operation of a snowplow is in the first instance discretionary conduct. Thus, the precedents argued by defendant that required a finding of malice or corrupt motives, or an intentional misuse of power, are not relevant to our inquiry. (See Larson, 113 Ill.App.3d at 977, 69 Ill.Dec. 789, 448 N.E.2d 249.) Rather, our inquiry is solely on the nature of defendant's conduct in operating the snowplow.
*1227 Defendant again relies on Mower to argue that any negligence in the operation of his snowplow was subject to immunity. However, Mower concerned sovereign immunity. (Mower, 402 Ill. at 488, 84 N.E.2d 435.) Sovereign immunity is founded on concepts entirely distinct from those which underlie public official's immunity and protects different interests. (Lusietto, 107 Ill. App.2d at 244, 246 N.E.2d 24.) Moreover, despite defendant's urging to the contrary and as we recognized in Madden, Mower's conclusion that the operation of a vehicle was a governmental function was effectively, if not explicitly, overruled in Hering. Madden, 56 Ill.App.3d at 1001, 14 Ill.Dec. 852, 372 N.E.2d 1131; see also Pree, 23 Ill.App.2d at 217-18, 162 N.E.2d 297.
Nor do Mora and Lusietto offer any reasoning that could warrant reversal of Kaiser as urged by defendant. In both, the alleged negligent conduct concerned not the operation of a vehicle, but the manner in which the roadway was maintained. The road commissioner's failure to direct the road maintenance staff to fill a pothole, which was struck by the plaintiff's auto and resulted in his injuries, was the subject of suit in Lusietto. Lusietto, 107 Ill. App.2d at 242, 246 N.E.2d 24.
So, too, in Mora, the alleged negligent conduct was the failure of the head of the traffic district to direct the head of the traffic division to conduct a study of the roadways to determine the need for a nopassing zone on a curved, hilly stretch of road where the plaintiff was injured in attempting to pass another vehicle. (Mora, 68 Ill.2d at 232, 12 Ill.Dec. 161, 369 N.E.2d 868.) Thus, neither case addressed public official's immunity for the operation of a vehicle, with the resultant independent duty of the driver to operate his vehicle in a safe manner. Rather, both Mora and Lusietto concerned the duty owed by the plaintiff to the public generally and, therefore, concerned essentially discretionary governmental functions.
The judgment of the trial court finding that the circuit court had subject-matter jurisdiction over plaintiff's negligence claim arising from defendant's operation of his vehicle in the course of his employment as a State employee and that defendant enjoyed no public official's immunity for negligence arising from such independent duty is affirmed.
Affirmed.
BOWMAN and WOODWARD, JJ., concur.