(No. 96-CC-4338—)

BOARD OF DIRECTORS OF 345 FULLERTON PARKWAY CONDOMINIUM ASSOCIATION, Claimant, *v.* TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS, and T. R. FULLERTON CORP., Respondents.

*Opinion filed March 20, 1998.*

BOEHM, PEARLSTEIN, BRIGHT, LTD. (GARY I. BLACKMAN, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (THOMAS S. GRAY, Assistant Attorney General, of counsel), for Respondent.

## OPINION AND ORDER

EPSTEIN, J.

This claim is brought against the Teachers' Retirement System of the State of Illinois (the TRS), a statutory pension system for certain school district employees, seeking damages from the TRS pension fund arising from a real estate investment of the TRS. This court *sua sponte* raised the issue of our subject matter jurisdiction over this claim, and over a similar claim against the TRS in another case, which has since settled and been withdrawn.

### The Jurisdictional Issues

The issue is whether this court's subject matter jurisdiction under section 8 of the Court of Claims Act (705

ILCS 505/8)—and, concomitantly, whether Illinois' statutory sovereign immunity (under the Immunity Act (745 ILCS 5/1))—covers (a) liabilities of TRS pension fund assets, and (b) liabilities of a business corporation that is (allegedly) an *alter ego* of the TRS, a State agency. The first jurisdictional issue has two aspects because of the different funds from which a TRS liability might be paid: (i) liability of the TRS pension fund itself payable from pension funds, and (ii) liability of the State payable from appropriated State tax-derived funds.

## Decision

This court now dismisses this claim and holds that:

(1) This court lacks jurisdiction over the TRS pension fund (and sovereign immunity does not cover that fund) because it is a trust fund for the sole benefit of present and future TRS members, and is not a State fund;

(2) This court lacks authority to order funds paid out of the TRS pension fund to satisfy a TRS liability; the General Assembly cannot do so because the pension fund is not appropriated;

(3) This court therefore lacks jurisdiction over the TRS Board in its capacity as trustee-owner of the TRS pension trust fund, and lacks jurisdiction over this claim, which asserts a liability arising out of the TRS' ownership of a real estate investment of the TRS pension fund;

(4) Insofar as this claim seeks to impose liability on the State, payable from State general funds, for a liability of the TRS pension fund, we have jurisdiction over such claim as it claims against the State, but such claim fails to state a cause of action against the State because:

> (a) liabilities of the TRS pension fund are not State liabilities, except insofar as such liabilities have been statutorily assumed by the State;

 (b) the only TRS liabilities statutorily assumed by the State are those obligations assumed in §16—158(c) of the Illinois Pension Code (40 ILCS 5/16—158(c)):

"Payment of the required State contributions and of all pensions and * * * other benefits granted under or assumed by this retirement system, and all expenses in connection with the administration and operation thereof, are obligations of the State."

 (c) This claim is an investment liability and is not an "expense[] [of] * * * the administration and operation" of the TRS and is therefore not an assumed State obligation. *See Jones v. Jones-Blythe Construction Co.* (4th Dist. 1986), 150 Ill. App. 3d 53, 501 N.E.2d 374, 103 Ill. Dec. 353.

(5) This court lacks jurisdiction over the T.R. Fullerton Corporation, an Illinois business corporation, notwithstanding the allegation in the complaint that it is an *alter ego* of the TRS, a State agency.

Our decision recognizes a bifurcated jurisdiction over the TRS and, impliedly, over some other statutory governmental agencies that function in both State and non-State capacities. Under our decision, such agencies may sometimes be "State agencies" and sometimes not, depending on the particular function or capacity that gives rise to a particular claimed liability. We recognize that this subtle distinction in Illinois sovereign immunity law may well create a trap for unwary litigants and their lawyers until finally resolved by the Supreme Court or codified by the General Assembly. We would prefer to avoid claims bouncing between the constitutional courts and this statutory court, which can prejudice good claims, but we are constrained to apply the statutes as we find them.

## Nature of the Claim

This claim arises out of a residential apartment building in Chicago (the "345 Fullerton Building") that was

converted to condominium ownership and which the TRS allegedly acquired from the defaulted original developer that the TRS had financed. The complaint seeks damages on behalf of the purchasers of the condominium units for certain alleged contractual liabilities of the developer, which are alleged to fall on the TRS as successor "equitable" owner and as indirect *de facto* operator and successor developer of the condominium building. The complaint also names an Illinois business corporation, the T.R. Fullerton Corporation ("TRF Corp."), which is alleged to hold legal title to the building as an *alter ego* and subsidiary of the TRS.

Another claim against the TRS based on its investment ownership of the 345 Fullerton Building—a contractor's contract claim for HVAC work done on the building—was also brought in this court, but was settled and withdrawn. *Mid Res, Inc. v. Teacher's Retirement System of the State of Illinois*, No. 95 CC 3515.

## Procedural History

Both this case and *Mid Res* were filed here after the circuit court dismissed the claimants' actions in that court on sovereign immunity grounds, holding that this court has exclusive jurisdiction of the claims against the TRS and, apparently, of those against TRF Corp.

This court *sua sponte* raised the issue of our subject matter jurisdiction over this claim and the *Mid Res* claim, and directed the parties in both cases to brief the jurisdictional issues. None of the parties filed a brief, and the *Mid Res* case settled as noted above. Because of the importance and recent recurrence of the peculiar sovereign immunity and jurisdictional issues presented, we now decide the matter without further delay.

## Analysis

### The TRS Pension Fund and State Funds.

The crux of the analysis is that the TRS pension fund is a statutory trust fund for the benefit of its present and future members—certain local school district employees—and is not a State fund and is not owned by the State in any material sense. Accordingly, as the funds and other investment assets of the TRS pension fund are not State funds or assets, they are outside the scope of this court's jurisdiction, which is limited to claims "against the State" (see section 8 of Court of Claims Act, 705 ILCS 505/8) and are outside the scope of the sovereign immunity established by section 1 of the Immunity Act (745 ILCS 5/1), which immunizes the "State of Illinois" from being sued as a defendant or party except in this court (or in the Public Labor Relations Board).

Although the TRS and its Board and staff may be a "State agency" for some purposes, as they surely are, the TRS' capacity with respect to the TRS pension fund is purely as fiduciary trustee for the benefit of the TRS members, as the statutory scheme makes clear.

Article 16 of the Illinois Pension Code is the current codification of the Teachers' Retirement System statute, and like its legislative pre-Code antecedents, plainly establishes the TRS for the benefit of certain defined classes of individuals, and not for the benefit of any governmental entity much less the State. The current version of the lead section of Article 16 (40 ILCS 5/16—101) states:

"§16—101. Creation of System. Effective July 1, 1939, there is created the 'Teachers' Retirement System of the State of Illinois' for the purpose of providing retirement annuities and other benefits for teachers, annuitants and beneficiaries. All of its business shall be transacted, its funds invested, and its assets held in such name."

Under the Illinois sovereign immunity caselaw—which extends back at least as far as the adoption and constitutionalization of State sovereign immunity in the 1870 Illinois Constitution (*see* Art. IV, section 26)—the primary and most dispositive factor in determining whether a particular governmental entity or agency is, or is not, part of the "State" for purposes of sovereign immunity is the character of the funds held or controlled by it. As our Supreme Court held in *People v. Illinois State Toll Highway Com.* (1954), 3 Ill. 2d 218, 227, 120 N.E.2d 35, 41 (Toll Highway Com. not a State agency, outside Court of Claims' jurisdiction):

"The multiplicity of factors which the courts have considered in reaching a decision of this question makes it impracticable to extract a simple rule which will fit every situation. The factor entitled to most weight, in our opinion, is [whether] * * * the general funds of the State [can] be reached in order to satisfy an obligation of the [defendant agency]."

Review of the sovereign immunity decisions of our Supreme Court discloses no more significant factor and discloses no qualification of this principle that sovereign immunity attaches to the State's funds and not to other funds. There are undoubtedly situations in which the character of particular funds is ambiguous or doubtful, as between being State funds, non-State governmental funds, private funds or some hybrid of these categories.[1]

But this case does not present an ambiguous or doubtful situation in this regard. The TRS pension funds are trust funds and are not State funds available for general

---

[1] Due at least in part to Illinois' extraordinary complex of statutory governmental entities that evolved during the century (1870-1970) of growth under the constraints of the 1870 Constitution, our courts have had to wrestle with some difficult issues of classification of various statutory entities (and their funds), as in *Toll Highway Commission, supra.* See, also, *Gocheff v. State Community College of East St. Louis* (5th Dist. 1979), 69 Ill. App. 3d 178, 386 N.E.2d 1141, 25 Ill. Dec. 477 (Community College of E. St. Louis as of 1977 not a State agency; outside Court of Claims' jurisdiction). See, also, *Williams v. Medical Center Comm'n* (1975), 60 Ill. 2d 389, 328 N.E.2d 1; *Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 80 Ill. Dec. 750, 466 N.E.2d 202; see, generally, *S.J. Groves & Sons Co. v. State of Illinois* (1982), 93 Ill. 2d 397, 67 Ill. Dec. 92, 444 N.E.2d 131.

State purposes. In this regard, we point out but do not rest upon the additional Illinois constitutional protection afforded to all Illinois pension rights. (See, 1970 Illinois Constitution, Art. XIII, sec. 5.) This reinforces our conclusion that the Illinois statutory pension fund is separate from the State treasury and from State funds.

This pension fund situation is analogous to cases in which state agencies act as court-appointed fiduciaries of private parties and their private funds. In such cases, we have held that this court lacks jurisdiction over the private funds over which the State agency has fiduciary custody. See, *eg.*, *Kulas v. Vogler* (1997), 49 Ill. Ct. Cl. 172, No. 95 CC 3631 (Public Administrator and Guardian of Lake Co., as court-appointed administrator of a decedent's probate estate); *Reynolds State Bank v. Office of State Guardian* (June 12, 1997), No. 97 CC 423 (Office of State Guardian, as court-appointed guardian of an incompetent individual's estate).

On the other side of the coin, but equally fundamentally, State general funds are not available to pay investment losses of pension trust funds like the TRS pension fund—or losses of other private trust funds over which a State agency may have fiduciary custody or trust ownership, as in *Kulas, supra,* and *Reynolds State Bank, supra.* This consideration bears additional comment as it is such a fundamental concern.

If this Court were to find liability against the TRS arising out of this investment asset (which happens to be improved real estate) and if we were then to pay the award from our general claims appropriation or if the General Assembly were then to appropriate the award from the general revenue fund—as ordinarily occurs under the present statutory scheme—then the claim against the pension fund would ultimately be paid from general State funds.

That would result in the State (the taxpayers) subsidizing the pension fund and its investment risks and losses. This court finds no basis for permitting such a legislatively unauthorized State subsidy of the TRS pension fund.

Under such a scheme, which we have rejected today, the State would effectively become a guarantor of all State-administered pension fund investment liabilities and many losses. In our view, that is not the law; has never been the law or the practice in Illinois; and would be a potentially huge and unpredictable drain on the State treasury. It should not escape notice that such a result would be an inversion of the principle and purpose of sovereign immunity.

This brings the discussion to the two reported Illinois reviewing court decisions addressing jurisdiction over the TRS:

*Jones v. Jones-Blythe Constr. Co.* (4th Dist. 1986), 150 Ill. App. 3d 53, 501 N.E.2d 374, 103 Ill. Dec. 353 (slip-and-fall on TRS office premises) (held that exclusive jurisdiction lies in the court of claims, based on statutory assumption of State liability under section 16—158, Illinois Pension Code (40 ILCS 5/16—158) providing that "all expenses in connection with the administration and operation [of the TRS] are obligations of the State"); and

*Utterback v. Board of Trustees of the Illinois Teachers' Retirement System* (4th Dist. 1997), ___ Ill. App. 3d ___ (slip-and-fall in White Oaks Mall, a TRS investment property) (held that exclusive jurisdiction lies in the court of claims, putatively based on *Jones* and the absence of an exception in section 8(d) of the Court of Claims Act, which grants exclusive jurisdiction over "all claims against the State for damages * * * sounding in tort").

Both *Jones* and *Utterback* held that exclusive jurisdiction over those tort claims against the TRS lie in this court rather than in the constitutional courts. We agree with and follow the analysis of *Jones*, but thereby arrive at the opposite conclusion on the facts of this case. We disagree with the result and with the incomplete analysis of *Utterback*, which we find to be inconsistent with *Jones*, and we decline to follow *Utterback*.

In the 1986 *Jones* decision, the appellate court ultimately applied the statutory division of liability in section 16—158 of the Pension Code. That statute assumes State financial responsibility for "administration and operation" expenses and thus liabilities of the TRS, as we observed above, and thereby opens the door to State liability in this Court for claims that fall within the statutory standard, as the *Jones* court concluded was the case for that slip-and-fall claim on TRS office premises. *Jones* was thus a straightforward application of the statute.

*Utterback*, however, ignored the statute and arrived at an incorrect result by following *Jones'* disposition while disregarding its reasoning. The *Utterback* opinion neither considered nor applied the section 16—158 "administration and operation" standard prescribed by the legislature for State responsibility for TRS liabilities. Although *Utterback* correctly rejected the common law proprietary-governmental distinction for determination of the scope of State sovereign immunity, that court never reverted to the statutory distinction that the legislature adopted for assuming responsibility for TRS liabilities.[2]

Thus *Utterback* wound up treating a TRS real estate investment liability as a TRS operating expense. If that

---

[2] Instead the *Utterback* opinion focused on the "all claims" language of this court's jurisdictional grant over tort claims against the State. (See section 8(b) of the Court of Claims Act.) That analysis, however, evades the dispositive issue of whether or not "the State" and State funds are the liable parties.

treatment were followed, the effect would be to shift that TRS investment liability onto the State's general revenue fund *sub rosa* through the procedures of this court and the routine appropriations process. These consequences were apparently not pointed out to the *Utterback* court nor were considered by it. *Utterback*'s result is wrong in imposing the expense of a slip and fall in a shopping mall onto the taxpayers merely because that mall is owned by a teachers' pension fund that is administered by a State board. It is the pension fund that should pay, assuming negligence of the TRS is proven, and not the Illinois taxpayers through the appropriations process.

We must observe that there is nothing inherently improper about this court adjudicating claims against the TRS or any other statutory pension system in Illinois if that were someday the will of the legislature. The problem is that this court cannot allocate pension fund investment liability to the responsible pension fund without statutory authority to direct payment from such funds. We now lack such remedial authority, which only confirms our conclusion that we lack adjudicatory jurisdiction over TRS pension fund liability claims. We do not seek such jurisdiction, but must point out that such jurisdiction would make little sense without the corresponding authority to allocate liability to the responsible fund, all of which would require legislative authority that in almost 100 years has not been deemed suitable for this court.

Jurisdiction over the Corporate Alter Ego.

Claimant named the T.R. Fullerton Corporation as a Respondent on the allegations that it is owned and controlled by the TRS and is effectively the TRS's *alter ego* for purposes of ownership and operation of the 345 Fullerton Building which is alleged to be a TRS pension fund investment. The short answers to this are (1) the TRF Corp. is as

a matter of law a private business corporation which is therefore outside our statutory jurisdiction irrespective of its ownership, and (2) assuming *arguendo* as we must on these pleadings that the TRS does own it and assuming further that it is legal for the TRS to own a subsidiary business corporation (neither of which issues we consider or decide here), this Court is still without jurisdiction over the TRF Corp. because, as we held above, we lack jurisdiction over its alleged principal, the investment properties of the TRS pension fund; because we lack jurisdiction over the principal we lack jurisdiction over its [alleged] *alter ego* absent an independent jurisdictional basis.

### Conclusion and Order

For the reasons set forth above, this claim is dismissed.